TERESA MARTINS, CONSERVATRIX (ESTATE OF
CARLOS MARTINS) ET AL. *v.* CONNECTICUT
LIGHT AND POWER COMPANY
(12165)

DUPONT, C. J., and FOTI, LAVERY, LANDAU, FREEDMAN, SCHALLER,
and SPEAR, Js.

Argued January 11—decision released June 14, 1994

*Carey B. Reilly,* with whom, on the brief, was *Richard A. Fuchs,* for the appellant (plaintiff).

*Maureen Danehy Cox,* with whom, on the brief, were *James K. Robertson, Jr.,* and *Giovanna M. Tiberii,* for the appellee (defendant).

DUPONT, C. J. The plaintiff is appealing from the judgment for the defendant, the Connecticut Light and Power Company (CL&P),[1] in a negligence action, rendered in accordance with a jury verdict. She claims that a new trial must be ordered because the trial court improperly (1) excluded evidence of allegedly similar prior accidents, and (2) allowed the defendant to chal-

---

[1] This suit was originally brought against the city of Stamford, its engineers, and CL&P. The Guerrera Construction Company intervened as a third party defendant. Settlement was effected as to all except CL&P. The plaintiff thereafter filed a substitute information naming only CL&P.

lenge peremptorily a prospective juror on the basis of gender. Because we conclude that the plaintiff must be awarded a new trial, we also consider the defendant's claim that the trial court improperly failed to admit into evidence the plaintiff's requests for admissions and the defendant's admissions thereof.[2] Practice Book § 4013 (a) (1) (B).

The plaintiff, Teresa Martins, brought suit individually[3] and as conservatrix for the estate of her husband, Carlos Martins, alleging that he had sustained severe injuries as a result of the negligence of the defendant. On September 22, 1983, Martins received an electric shock when, in the course of his employment as a laborer for the Guerrera Construction Company, the hydraulic hose of an excavator came into contact with the defendant's uninsulated overhead wires in Stamford. At the time, Martins was working on a sewer construction project, and the excavator was being used to suspend a plate to be placed over a hole in the road. Martins was guiding the plate into position when the excavator struck the overhead wires.

I

The plaintiff claims that the trial court improperly excluded evidence of prior accidents involving the defendant's uninsulated overhead wires. The plaintiff sought to introduce evidence of nine fatal accidents

---

[2] The defendant similarly sought review, in the event of a new trial, of whether sums received by the plaintiff in settlement with other defendants for the same injuries should be deducted from any future verdict for the plaintiff. This issue has been resolved since the filing of the defendant's brief. A trial court should not reduce the amount of a plaintiff's verdict by any moneys previously received from other tortfeasors unless the court makes a determination that the total amount is excessive. *Mauro* v. *Yale-New Haven Hospital*, 31 Conn. App. 584, 587–88, 627 A.2d 443 (1993). A pretrial settlement does not mandate an automatic reduction of the jury verdict. Id.

[3] The plaintiff alleged the loss of consortium of her husband, Carlos Martins, as a result of the negligence of the defendant.

occurring between 1960 and 1981 that involved contact of a crane or boom-type equipment with the defendant's overhead wires and the accident reports of those accidents prepared by the department of public utilities. All of the reports were in the records of the defendant. The reports were marked as exhibits for identification only and an offer of proof was made through an expert. The expert testified that statistics are kept as to those contacts between boom-type vehicles and high voltage power lines that cause injury, that two of the accidents involved sewer construction projects, and that one of those two occurred in Stamford. The expert also testified that the conditions of all of the accidents were substantially similar to that of Martins' accident and that the fatal accident involving Michael McInerney in May, 1979, was most similar. The McInerney accident occurred four years before the Martins accident in the same city during a sewer project. Both accidents occurred when power equipment being used to lift a plate to be placed in the road struck the defendant's overhead power lines. Both injured workers were guiding the plates into place when the contacts occurred. The McInerney report concluded that the fatality was not caused by the defendant's equipment but was caused by the accidental contact between the boom of a power shovel and the defendant's overhead wires.

The plaintiff claimed that the evidence was relevant to show that the defendant knew or should have known of the dangers of its wires, and should have reasonably anticipated that harm would likely result from its act or failure to act. The plaintiff did not offer the evidence to prove the existence of a particular physical condition or defect. The plaintiff's complaint alleged that Martins' injuries were caused by the negligence of the defendant in that the defendant "failed to prevent the injury . . . from occurring by moving, de-energizing or insulating the wires when it knew or should have

known that substantially similar accidents had previously occurred [and] failed to analyze properly the data available to it concerning previous accidents, so as to avoid this accident . . . ." The plaintiff argues that the evidence relates to foreseeability and notice and should have been admitted.

The trial court excluded the evidence on several grounds. The court found that the plaintiff failed to demonstrate that any of the prior accidents were sufficiently similar to the accident in the present case. The trial court also stated that because the defendant had admitted that its electrical facilities had the potential to cause serious injuries, the evidence of prior accidents had marginally probative significance. The court concluded that the prejudicial effect of the evidence outweighed its probative value, and that the introduction of the evidence would serve only to lengthen and complicate the trial.

Evidence of prior accidents "is admissible to prove the existence of a particular physical condition, situation, or defect"; *Hall* v. *Burns,* 213 Conn. 446, 451, 569 A.2d 10 (1990); *Colucci* v. *PJR's, Inc.,* 31 Conn. App. 757, 760, 626 A.2d 1326 (1993); or to prove notice of a dangerous character. *Sacks* v. *Connecticut Co.,* 109 Conn. 221, 238–39, 146 A.2d 494 (1929); *Aaronson* v. *New Haven,* 94 Conn. 690, 693, 110 A.2d 872 (1920); see also *Borden, Inc.* v. *Florida East Coast Railway Co.,* 772 F.2d 750, 754 (11th Cir. 1985). Such evidence is admissible to show that the defendant knew or should have known of the hazards created by a particular condition or danger. *Sacks* v. *Connecticut Co.,* supra, 238–39; *Aaronson* v. *New Haven,* supra, 693; C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 8.9.3; annot., Modern Status of Rules as to Admissibility of Evidence of Prior Accidents or Injuries at Same Place, 21 A.L.R.4th 472 (1983).

A plaintiff attempting to introduce evidence of prior accidents must show that the circumstances of the other accidents were substantially similar to those under which the plaintiff was injured. *Hall* v. *Burns,* supra, 213 Conn. 452; *Colucci* v. *PJR's, Inc.,* supra, 31 Conn. App. 760. The requirement of a substantially similar condition is lessened when the evidence is offered to show notice of a dangerous condition. In such a case, the prior accidents need "only be such as [would] call defendant's attention to the dangerous situation that resulted in the litigated accident." C. McCormick, Evidence (4th Ed. 1992) c. 18, § 200, p. 849; see also annot., 21 A.L.R.4th 472 (1983).

Generally, evidence is admissible to prove a material fact that is relevant to the cause of action alleged by the plaintiff. *Chouinard* v. *Marjani,* 21 Conn. App. 572, 575, 575 A.2d 238 (1990). A trial court has broad discretion in ruling on the admissibility of evidence, and we will not disturb such a decision absent an abuse of discretion. Id. Nevertheless, "[t]he exercise of discretion to omit evidence in a civil case should be viewed more critically than the exercise of discretion to include evidence. It is usually possible through instructions or admonitions to the jury to cure any damage due to inclusion of evidence, whereas it is impossible to cure any damage due to the exclusion of evidence." *Larensen* v. *Karp,* 1 Conn. App. 228, 237, 470 A.2d 715 (1984) (*Dupont, J.,* dissenting); see also *Batick* v. *Seymour,* 186 Conn. 632, 637, 443 A.2d 471 (1982) (suggesting that standard for admitting evidence that is challenged as prejudicial should be lower in civil case than in criminal case); C. Tait & J. LaPlante, supra, § 8.1.3. "To be excluded the evidence must create prejudice that is *undue* and so great as to threaten an injustice if the evidence were to be admitted." (Emphasis in original.) *Chouinard* v. *Marjani,* supra, 576; see also *Richmond*

v. *Longo,* 27 Conn. App. 30, 39, 604 A.2d 374, cert. denied, 222 Conn. 902, 606 A.2d 1328 (1992).

In this case, the plaintiff alleged that the defendant was negligent for a number of reasons. One was the failure to prevent injury when it knew that substantially similar accidents had occurred. Another was the failure to analyze the data available to it concerning previous accidents in order to prevent the plaintiff's injury. The evidence of the nine prior accidents was relevant, therefore, to prove the defendant's knowledge of the dangerous condition, to prove that the defendant failed to analyze data available to it in order to prevent the plaintiff's injury, and to prove that the defendant should have anticipated that harm would likely result from the condition. Although all nine prior accidents were relevant does not mean that evidence as to all of them should have been admitted.

The evidence of one of the nine accidents was relevant and also substantially similar to the accident here, as the expert witness testified during the offer of proof. We conclude, on the basis of the facts as previously stated, that the circumstances of the 1979 accident and the litigated accident were essentially the same. Although the 1979 accident occurred four years before the litigated accident, that fact goes to the weight of the evidence rather than to its admissibility. See annot., 21 A.L.R.4th 472 (1983). Substantially similar does not mean exactly similar, and the extent to which the conditions may vary does not prevent admissibility. See *State* v. *Dontigney,* 215 Conn. 646, 649–51, 577 A.2d 1032 (1990); annot., 21 A.L.R.4th 472 (1983).

We also conclude that the evidence of the 1979 accident was highly probative. In order for a plaintiff to maintain a cause of action in negligence, the plaintiff must show the existence of a duty of care. *Calderwood* v. *Bender,* 189 Conn. 580, 584, 457 A.2d 313 (1983);

*O & G Industries, Inc.* v. *New Milford,* 29 Conn. App. 783, 790, 617 A.2d 938 (1992), aff'd, 229 Conn. 303, 640 A.2d 110 (1994). "A duty to use care may arise . . . from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act." *Calderwood* v. *Bender,* supra, 584; *O & G Industries, Inc.* v. *New Milford,* supra, 790. Knowledge of a dangerous condition establishes a duty of care and "generally requires greater care to meet the standard of reasonable care." *Rodriguez* v. *New Haven,* 183 Conn. 473, 479, 439 A.2d 421 (1981); see also *Sacks* v. *Connecticut Co.,* supra, 109 Conn. 238–39; *Aaronson* v. *New Haven,* supra, 94 Conn. 693. In this case, the plaintiff offered the prior accidents, including the 1979 accident, as evidence to show knowledge of a dangerous condition and, in turn, to establish a duty of care. Because a duty of care is an essential element of negligence, the evidence was highly relevant to prove the plaintiff's case. By excluding the evidence, the trial court severely restricted the plaintiff's efforts to prove negligence. See *May* v. *Missouri-Kansas-Texas R. Co.,* 583 S.W.2d 694 (Tex. 1979).

The trial court found that the evidence was only marginally probative because the defendant had admitted that its facilities had the potential to cause harm. This admission is not the same as evidence of actual knowledge of a dangerous condition because it does not necessarily prove negligent conduct. Negligence is conduct that "falls below the objective standard established by law for the protection of others against unreasonable risk of harm." *American National Fire Ins. Co.* v. *Schuss,* 221 Conn. 768, 777, 607 A.2d 418 (1992). An admission as to a condition's potential for harm may not establish an unreasonable risk. Furthermore, because the plaintiff has the burden of proving its case,

it may prove a fact in issue "by the most convincing evidence it is able to produce," regardless of whether a defendant's admission might help substantiate the same fact. See *State* v. *Walker,* 206 Conn. 300, 315, 537 A.2d 1021 (1988); *State* v. *Wilson,* 199 Conn. 417, 448, 513 A.2d 620 (1986); *State* v. *Falcon,* 196 Conn. 557, 566–67, 494 A.2d 1190 (1985). A party should not be denied the right to prove every essential fact material to its cause of action by the most convincing evidence available, and such evidence need not be excluded simply because other evidence tending to show the same fact has already been admitted. See *State* v. *Walker,* supra, 315; *State* v. *Wilson,* supra, 448; *State* v. *Falcon,* supra, 566–67.

The trial court also found that the prejudice of the evidence of the prior accidents outweighed its probative value. In order to exclude evidence on the ground of prejudice, there must be undue prejudice great enough to threaten an injustice. *Chouinard* v. *Marjani,* supra, 21 Conn. App. 575–76. "Prejudicial evidence is that evidence which may *unduly* arouse the jury's emotions of . . . hostility or sympathy." (Emphasis in original.) *State* v. *Waterman,* 7 Conn. App. 326, 350, 509 A.2d 518, cert. denied, 200 Conn. 809, 512 A.2d 331 (1986). The party claiming prejudice has the burden of showing such a threat. *Chouinard* v. *Marjani,* supra, 575–76. Here, the accident report of the McInerney accident does not ascribe any blame to the defendant and contains no lurid pictures. It is, therefore, difficult to assign to the evidence the ability to arouse emotions of hostility against the defendant, or sympathy for the plaintiff. The evidence of the 1979 accident may be adverse in the sense that it could have a negative impact on the defendant because it tends to prove an element of the plaintiff's cause of action, but that does not make it prejudicial.

The trial court further concluded that the introduction of the evidence would prolong and complicate the case. Relevant evidence may be excluded where its introduction will "unduly distract the jury from the main issues," or "consume an undue amount of time." *State* v. *Greene,* 209 Conn. 458, 478, 551 A.2d 1231 (1988); *State* v. *DeMatteo,* 186 Conn. 696, 702–703, 443 A.2d 915 (1982); see also *Chouinard* v. *Marjani,* supra, 21 Conn. App. 575. In this case, the introduction of the McInerney accident evidence would have created no such threat. The other accidents, however, if admitted, might have prolonged the case and prejudiced the defendant unduly because they were "stale" in time, took place in other cities, occurred under different conditions, and were cumulative. We, therefore, do not conclude that the trial court improperly excluded evidence of the eight other accidents. The McInerney accident, however, should have been treated differently. As to that accident, the trial court could have avoided any distraction from the main case by instructing the jury that the evidence was being admitted for the limited purpose of showing notice of a dangerous condition and the foreseeability of the litigated accident.

We conclude that the McInerney evidence should have been admitted because it was competent evidence having a tendency to make the existence of a fact that was relevant to the determination of the litigation more probable than it would be without the evidence. See *Borden, Inc.* v. *Florida East Coast Railway Co.,* supra, 772 F.2d 754. That evidence was not unduly prejudicial, had a logical tendency to aid the trier of fact, did not surprise the defendant, and would not have confused the jury. When the evidence is relevant and the likelihood of prejudice is not great, deviation from the general rule of admissibility is not warranted and discretion has been abused if the evidence is excluded. See *Batick* v. *Seymour,* supra, 186 Conn. 638.

"The plaintiff, however, is entitled to relief from an erroneous ruling on the admissibility of evidence only if the error is also harmful." *Chouinard* v. *Marjani, supra,* 21 Conn. App. 577. The plaintiff bears the burden of demonstrating that the erroneous ruling was likely to affect the result of the trial. Id. In this case, the plaintiff has met its burden. The exclusion of the prior accident evidence prevented the jury from considering relevant and material evidence that affected an ultimate issue, and prevented the plaintiff from proving whether the defendant had knowledge of a dangerous condition. Because such knowledge establishes a duty of care and generally determines the extent of care necessary to satisfy the defendant's duty, the exclusion hindered the plaintiff's efforts to prove a key element of negligence. As a result, we conclude that the erroneous exclusion of the evidence likely affected the result of the trial, and, therefore, was harmful. The refusal to admit the McInerney accident evidence was an abuse of discretion and requires us to remand this case for a new trial.

## II

The plaintiff claims that the trial court improperly allowed the defendant to discriminate on the basis of gender in its use of a peremptory challenge to exclude a venireperson from the jury, and that, therefore, the plaintiff is entitled to a new trial. Because we have concluded that a new trial is necessary because of the exclusion of relevant evidence, we reach this issue only because it may recur.

During the selection of alternate jurors, the defendant exercised a peremptory challenge to excuse a black, female venireperson. The plaintiff objected to the challenge, alleging that the defendant had unconstitutionally exercised the challenge on the basis of the venireperson's race in violation of *Batson* v. *Kentucky,*

476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). The defendant responded that the challenge was exercised not because of the venireperson's race, but because she was a young woman.[4] After the trial court found that the challenge was not racially based, the plaintiff moved that the challenge was improperly exercised on the basis of gender and age. The trial court conducted a hearing on the issue,[5] and concluded that the defendant had not attempted to excuse a venireperson on the basis of gender or age.[6] The court also ruled that *Batson* principles do not prohibit gender or age discrimination claims in regard to the exercise of peremptory challenges.

The issue before us, namely, whether federal constitutional equal protection prevents a civil litigant from peremptorily challenging a potential juror on the basis of gender, has recently been decided by the United States Supreme Court in *J.E.B.* v. *Alabama ex rel. T.B.*, U.S. , 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994). In *J.E.B.*, the Supreme Court held that the federal equal protection clause prohibits discrimination in jury selection on the basis of gender, or on the assumption that a potential juror will be biased in a particular case because of his or her gender. Id., 1429–30. The court

[4] The defendant argued at this time that the plaintiff had exercised its peremptory challenges in an effort to get young women on the jury who would empathize with the plaintiff, also a young woman. The defendant claimed it was exercising its peremptory challenges in an effort to counter the plaintiff's strategy.

[5] At the hearing, the defendant stated that it exercised its peremptory challenge because the venireperson was a young mother about the same age as the plaintiff with three children about the same ages as the plaintiff's children. The defendant also asserted other reasons for exercising the challenge, including the venireperson's limited knowledge about the dangers of electricity and her lack of responsibility for her own personal safety as evidenced by the fact that she did not always wear a seatbelt while riding in a motor vehicle.

[6] Because we reverse on the plaintiff's first claim, we do not need to reach the issue of whether the trial court correctly concluded that the defendant had not attempted to excuse a venireperson on the basis of gender.

concluded that gender discrimination in the use of peremptory challenges is unconstitutional because it does not substantially further the state's interest in achieving a fair and impartial trial. Id., 1426–28.

The court found virtually no support for the claim that gender alone accurately predicts potential jurors' attitudes, and thus rejected the argument that a decision to strike on the basis of gender could be reasonably based on the perception that the prospective juror might be more sympathetic to a particular party because of the prospective juror's gender. Id., 1428. The court instead found that the exercise of peremptory challenges in reliance on gender stereotypes "ratif[ies] and reinforce[s] prejudicial views of the relative abilities of men and women." Id., 1427. The court regarded such a result as the very kind that the law condemns. Id., 1426–27.

Discrimination in the selection of a jury, whether based on race or on gender, harms the litigants, the excluded jurors, and the community. Id., 104. Litigants are harmed because the discriminatory selection process may affect the fairness of the proceedings. Id. "The very idea of a jury is a body . . . composed of the peers or equals of the person whose rights it is selected or summoned to determine." *Batson* v. *Kentucky,* supra, 476 U.S. 86. Gender discrimination deprives litigants of the protection that a jury trial is intended to secure. *J.E.B.* v. *Alabama ex rel. T.B.,* supra, 114 S. Ct. 1427. Individual jurors are harmed because all persons, when granted the opportunity to participate in the judicial process, have the right not to be excluded based on stereotypical presumptions about their abilities and attitudes. Id., 105. A person's competence to serve as a juror is determined by an assessment of individual qualifications, not by stereotypical assumptions about those abilities. *Batson* v. *Kentucky,* supra, 87. Finally, "[t]he community is harmed

by the State's participation in the perpetuation of invidious group stereotypes and the inevitable loss of confidence in our judicial system that state-sanctioned discrimination in the courtroom engenders." *J.E.B.* v. *Alabama ex rel. T.B.*, supra, 1427.

In Connecticut, peremptory challenges constitute an important part of trial procedure. Our constitution grants a right to challenge prospective jurors peremptorily.[7] Conn. Const., art. I, § 19. Nevertheless, Connecticut's choice of jury selection procedures, whether constitutional or statutory, must comply with the strictures of the federal constitution. See *J.E.B.* v. *Alabama ex rel. T.B.*, supra, 114 S. Ct. 1421. Thus, while Connecticut litigants still have a state constitutional right to use peremptory challenges, the extent of that use is now limited by the equal protection clause of the federal constitution as enunciated in the *J.E.B.* decision, as potential jurors may no longer be peremptorily challenged on the basis of gender. "Parties still may remove jurors whom they feel might be less acceptable than others on the panel; gender simply may not serve as a [reason for exclusion]."[8] Id., 1429.

"As with race-based *Batson* claims, a party alleging gender discrimination must make a prima facie showing of intentional discrimination before the party exercising the challenge is required to explain the basis for the strike. . . . When an explanation is required, it need not rise to the level of a 'for cause' challenge;

---

[7] Article first, § 19, of the Connecticut constitution, as amended by amendment four, provides in pertinent part: "In all civil and criminal actions tried by a jury, the parties shall have the right to challenge jurors peremptorily, the number of such challenges to be established by law."

[8] "Parties may also exercise their peremptory challenges to remove from the venire any group or class of individuals normally subject to 'rational basis' review. . . . Even strikes based on characteristics that are disproportionately associated with one gender could be appropriate, absent a showing of pretext." (Citations omitted.) *J.E.B.* v. *Alabama ex rel. T.B.*, supra, 114 S. Ct. 1429.

rather, it merely must be based on a juror characteristic other than gender, and the proffered explanation may not be pretextual." (Citation omitted.) Id., 1429–30.

In *J.E.B.*, which was based on a petitioner's paternity and support trial, the respondent was the state of Alabama and it had filed the suit on behalf of the mother. "[W]hether the trial is criminal or civil, potential jurors, as well as litigants, have an equal protection right to jury selection procedures that are free from state-sponsored group stereotypes rooted in, and reflective of, historical prejudice. See *Powers* v. *Ohio,* 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991); *Edmonson* v. *Leesville Concrete Co.,* 500 U.S. 614, 111 S. Ct. 2077, 114 L. Ed. 2d 660 (1991); *Georgia* v. *McCollum,* 505 U.S. 42, 112 S. Ct. 2348, 120 L. Ed. 2d 33 (1992)." *J.E.B.* v. *Alabama ex rel. T.B.,* supra, 114 S. Ct. 1421. It is clear that the principles of *J.E.B.* apply to civil cases in which the government is a party. It is not an absolute certainty, however, that the principles apply to civil cases in which a nongovernment party has used gender based peremptory challenges. Justice O'Connor, in her concurrence, states her conviction that *J.E.B.* should be limited to a prohibition by the government of gender based peremptory challenges. She, however, assumes that *J.E.B.* will not be applied in such a limited manner in the future. We agree. The language of the majority leaves little doubt that its principles will be applied to the parties in a civil action in which the government is not involved. Individual jurors have the right to nondiscriminatory jury selection procedures. Because discrimination based on gender is prohibited and potential jurors as well as litigants must receive the protection of that right, the right must logically remain unmodified and intact regardless of the identity of the litigants. We, therefore, conclude that *J.E.B.* applies to cases such as this one, in which the government is not a litigant.

## III

Because we have concluded that the plaintiff must be awarded a new trial, we next review whether the trial court should have sustained the plaintiff's objection to the defendant's offer into evidence of the plaintiff's requests for admissions and the defendant's answers. The plaintiff filed a number of requests for admissions, two of which are involved in this claim.[9] These two requests were admitted by the defendant. The defendant sought to use them to establish conclusively the matter admitted, but the trial court sustained the plaintiff's objection to their admission into evidence.

Pursuant to Practice Book § 238, a party may serve on any other party a request for admission of the truth of any matter relevant to the disposition of the pending action. Generally, any matter admitted by the party to whom the request is made is conclusively established. Practice Book § 240. Admissions obtained may be offered into evidence, but their admissibility is subject to evidentiary principles, including the hearsay rule. See *Larson* v. *Fazzino*, 216 Conn. 431, 433 n.4, 582 A.2d 179 (1990); *Falcone* v. *Night Watchman, Inc.*, 11 Conn. App. 218, 219 n.1, 526 A.2d 550 (1987); 8 C. Miller & A. Wright, Federal Practice and Procedure (1970) § 2264.

[9] The plaintiff's requests for admissions, for which the plaintiff sought an admission or a denial, included the following: "No. 51. On September 22, 1983, the Connecticut Light and Power Company used every effort to properly warn and protect the public from danger and exercised all possible care to reduce the hazard to which employees, customers and others may be subjected by reason of its equipment and facilities.

\* \* \*

"No. 106. Prior to September 22, 1983, Connecticut Light and Power Company advertised the dangers of electrical contacts between uninsulated overhead wires and, among other things, large pieces of construction equipment similar to the Drott 50 crawler, Series D."

A party may not introduce its own admission made following a request for admission because the admission would not satisfy the exception to the hearsay rule for admissions of a party opponent. See 8 C. Miller & A. Wright, supra, § 2264. Under the admissions of a party opponent exception to the hearsay rule, evidence must be offered against the party that made the admission. *State* v. *Woodson,* 227 Conn. 1, 15, 629 A.2d 386 (1993); *In re Zoarski,* 227 Conn. 784, 796, 632 A.2d 1114 (1993). A party may not offer its own admission for its own benefit. *Bell Food Services, Inc.* v. *Sherbacow,* 217 Conn. 476, 489, 586 A.2d 1157 (1991); *State* v. *Tyson,* 23 Conn. App. 28, 34, 579 A.2d 1083, cert. denied, 216 Conn. 829, 582 A.2d 207 (1990). Here, because the defendant admitted the plaintiff's requests for admissions, and sought to introduce its own admissions for its own benefit, the admissions did not satisfy the admissions of a party opponent exception to the hearsay rule. Thus, the trial court properly prevented the introduction of the evidence.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.