LOUIS CLAVELOUX ET AL. *v.* DOWNTOWN RACQUET CLUB ASSOCIATES ET AL.
(14629)

Foti, Landau and Heiman, Js.

Argued December 17, 1996—officially released April 8, 1997

*David A. Reif*, with whom, on the brief, was *Thomas E. Katon*, for the appellants (plaintiffs).

*Daniel P. Scapellati*, with whom, on the brief, was *Harris B. Appelman*, for the appellees (defendants).

HEIMAN, J. The plaintiff[1] appeals from the judgment rendered by the trial court in favor of the defendants[2] following the granting of a directed verdict at the close of the liability phase[3] of the plaintiff's case. On appeal, the plaintiff claims that the trial court improperly (1) granted the defendants' motion for a directed verdict, (2) excluded relevant evidence offered by the plaintiff, and (3) refused to allow the plaintiff's counsel to pose a hypothetical question to the plaintiff's expert witness. We reverse the judgment of the trial court.

The following facts are necessary for a proper resolution of this appeal. On November 8, 1987, the plaintiff, Louis Claveloux, was engaged in a racquetball tournament on the defendants' premises, the Downtown Rac-

---

[1] Jean Claveloux, the spouse of Louis Claveloux, is also a plaintiff in this case. She alleges a derivative loss of consortium, which is not at issue in this appeal. Therefore, for purposes of this opinion we will refer to Louis Claveloux as the plaintiff.

[2] The defendants in this case are the Downtown Racquet Club Associates and the general partner of the Downtown Racquet Club Associates, Edmund J. Fusco.

[3] We note that the parties had agreed that the defendants would move for a directed verdict at the conclusion of the liability phase of the plaintiff's case.

quet Club. In an attempt to return a shot from his opponent, the plaintiff took two or three steps to his left, slipped, and was propelled head first into the right side wall of the racquetball court. As a result of this accident, the plaintiff became a quadriplegic. He is paralyzed from the neck down. The plaintiff was fifty-seven years old at the time of the accident. He played racquetball approximately six times a week and had participated in approximately thirty racquetball tournaments.

On February 15, 1995, at the conclusion of the liability phase of the plaintiff's case, the trial court granted the defendants' motion for a directed verdict, and directed the jury to return a verdict in favor of the defendants. The trial court determined that the plaintiff had failed to produce sufficient evidence to support a prima facie case of premises liability.[1] On March 13, 1995, the trial court denied the plaintiff's motion to set aside the verdict. This appeal follows.

The plaintiff asserts that the trial court improperly excluded evidence of prior slipping accidents on the defendants' racquetball courts. The plaintiff further

---

[1] During the argument on the motion for a directed verdict, the defendants discussed their second special defense that the plaintiff "entered into an exculpatory agreement in which he agreed to give up any claims he had against these defendants." The trial court, however, granted the defendants' motion for a directed verdict solely on the ground that the plaintiff had failed to produce sufficient evidence to support a prima facie case of premises liability. In ruling on the motion for a directed verdict, the trial court explained, "So, I'm going to grant the defendants' motion for directed verdict and I think given that ruling I do not necessarily have to rule on the claim of waiver . . . ."

We conclude that the trial court did not rule on the defendants' special defense of release, and the trial court's comments regarding the release or waiver issue are at best dicta. Moreover, the defendants failed to file a motion for articulation of the trial court's decision or to raise the release issue as an alternative ground for affirmance in their Practice Book § 4013 (a) (1) preliminary statement of issues. Thus, the defendants "failed to follow the relatively simple rules established to guarantee the presentation to this court of a record appropriate to review. . . . As an appellate tribunal, either we adhere to the letter of the rules or create judicial anarchy, whereby, on an ad hoc basis, we decide cases, the outcome of which will turn on the mind-set of the panel hearing the appeal." (Citation omitted; internal quotation marks omitted.) *Dime Savings Bank of Wallingford* v. *Cornaglia*, 33 Conn. App. 549, 555–56, 636 A.2d 1370, cert. granted, 229 Conn. 907, 640 A.2d 120 (1994), appeal withdrawn October 17, 1994. For all of the foregoing reasons, we decline to review the defendants' release claim.

asserts that this improper evidentiary ruling prevented the plaintiff from introducing sufficient evidence to make out a prima facie case of premises liability. We agree.

Certain additional facts are necessary to an understanding of our resolution of this issue. The defendants filed a motion in limine to preclude evidence of prior conditions and complaints, "unless they are the same court as the accident and reasonably close in time to November 8, 1987." A decision on the motion in limine was deferred. At trial, outside the presence of the jury, the plaintiff testified that on the day before the accident, while warming up for a racquetball game in another of the defendants' racquetball courts, both his racquetball partner and he slipped on the surface of the court. The plaintiff explained that both he and his partner had slipped on two different slippery spots on the floor, both of which seemed to be covered in a clear slippery oil. The plaintiff further testified that he reported this slipping problem to someone at the front desk of the club, and within a few minutes, a maintenance man came and mopped the entire court.

After the plaintiff's testimony, the trial court granted the motion in limine and excluded this evidence on the ground that these prior slipping incidents were not substantially similar to the slipping incident at issue for two reasons. First, the prior accidents occurred on another racquetball court, on another day, when the plaintiff was warming up for a racquetball match, while the accident here occurred when the plaintiff was in the process of playing a racquetball match. Second, the prior incidents were caused by a foreign substance on the court floor, and there is no claim that the injury here was caused by a foreign substance on the court floor.[5]

[5] The relevant portion of the trial court's evidentiary ruling is as follows: "I particularly point out this case [*Wray* v. *Fairfield*, 126 Conn. 221, 227, 10 A.2d 600 (1940)] because, as I stated yesterday, it was always my understanding in these types of cases that you have to prove or show proof of the particular defect, and if we talk about substantially the same, and in the circumstances of this particular case you are offering proof of two spots on the floor that were cleaned up to show, I guess, notice . . . of another court on another day where no claim is made of any kind of foreign substances on the floor leading in any

"[E]vidence is admissible to prove a material fact that is relevant to the cause of action alleged by the plaintiff. . . . A trial court has broad discretion in ruling on the admissibility of evidence, and we will not disturb such a decision absent an abuse of discretion. . . . Nevertheless, [t]he exercise of discretion to omit evidence in a civil case should be viewed more critically than the exercise of discretion to include evidence. It is usually possible through instructions or admonitions to the jury to cure any damage due to inclusion of evidence, whereas it is impossible to cure any damage due to the exclusion of evidence." (Citations omitted; internal quotation marks omitted.) *Martins* v. *Connecticut Light & Power Co.*, 35 Conn. App. 212, 217, 645 A.2d 557, cert. denied, 231 Conn. 915, 648 A.2d 154 (1994).

"Evidence of prior accidents is admissible to prove the existence of a particular physical condition, situation or defect . . . or to prove notice of a dangerous character. . . . Such evidence is admissible to show that the defendant knew or should have known of the hazards created by a particular condition or danger. . . . A plaintiff attempting to introduce evidence of prior accidents must show that the circumstances of the other accidents were substantially similar to those under which the plaintiff was injured." (Citations omitted; internal quotation marks omitted.) Id., 216–17.

"Substantially similar does not mean exactly similar, and the extent to which the conditions may vary does not prevent admissibility." Id., 218. Further, "[t]he requirement of a substantially similar condition is les-

way, that we consider in terms of causation, to the plaintiff's incident. You have offered testimony through the plaintiff of his having slipped on a foreign substance on a court the day before his accident while warming up, as he put it, and I asked him to describe for us what he was doing while warming up, which is in no way similar, in the court's opinion, to his testimony of what he was doing while engaged in play on November 8, 1987, and immediately prior to this unfortunate accident. . . . I said all that to say that under 8.9.5, Mr. Reif, I'm not convinced at all by the offer of the testimony thus far that we are talking about similarity or substantial similarity of conditions and/or use. . . . Motion in limine granted."

sened when the evidence is offered to show notice of a dangerous condition. In such a case, the prior accidents need only be such as [would] call [the] defendant's attention to the dangerous situation that resulted in the litigated accident." (Internal quotation marks omitted.) Id., 217.

The trial court applied an incorrect standard in determining the admissibility of the prior slipping accidents. The evidence that the plaintiff and his racquetball partner slipped on another of the defendants' racquetball courts the day before the incident here, and consequently complained to the defendants about the slipperiness of the racquetball courts, was offered to prove that the defendants had notice of the dangerous condition that caused the plaintiff's fall. Thus, under *Martins*, the appropriate inquiry was not whether the prior accidents were "substantially similar" to the accident here, but rather whether the prior accidents would call the defendants' attention to the dangerous condition, a less rigorous standard. Id. The prior slipping incidents occurred one day before the slipping incident at issue, while the plaintiff was playing racquetball on the defendants' racquetball courts. We conclude that these prior incidents were such as to call the defendants' attention to the slippery condition of the racquetball courts.

Moreover, the trial court's determination that in order to be admissible, the prior slipping accidents must have been caused by the same particular defect as that which caused the litigated accident is incorrect. Under *Gray* v. *Fitzgerald & Platt, Inc.*, 144 Conn. 57, 127 A.2d 76 (1956), and *Magnon* v. *Glickman*, 185 Conn. 234, 440 A.2d 909 (1981), the plaintiff must prove only that the prior accidents and the accident here were both caused by a slippery floor. The plaintiff need not prove that the slippery floor that caused the prior accidents and the slippery floor that caused this accident were both made slippery by the same particular defect. See *Gray*

v. *Fitzgerald & Platt, Inc.*, supra, 59; *Magnon* v. *Glick-man*, supra, 237–40. We conclude that the prior acci-dents were such as to call the defendants' attention to the slippery condition of their racquetball courts, and thus the trial court improperly excluded this evidence.

"We have often stated that before a party is entitled to a new trial because of an erroneous evidentiary rul-ing, he or she has the burden of demonstrating that the error was harmful. . . . When determining that issue in a civil case, the standard to be used is whether the erroneous ruling would likely affect the result. . . . Any testimony in a case that tends of itself or in connection with other testimony to influence the result on a fact in issue is material. If the testimony would tend to affect the verdict . . . it meets the test of materiality." (Citations omitted; internal quotation marks omitted.) *Swenson* v. *Sawoska*, 215 Conn. 148, 153, 575 A.2d 206 (1990).

"The plaintiff bears the burden of demonstrating that the erroneous ruling was likely to affect the result of the trial." *Martins* v. *Connecticut Light & Power Co.*, supra, 35 Conn. App. 222. In this case the plaintiff has met that burden. The exclusion of evidence of the prior accidents prevented the jury from considering relevant and material evidence that affected an ultimate issue and prevented the plaintiff from proving whether the defendants had knowledge of a dangerous condition. Because such knowledge establishes a duty of care and the extent of care necessary to satisfy the defendants' duty, the exclusion of evidence affected the plaintiff's ability to prove a prima facie case of premises liability. See id. As the trial court granted a directed verdict in favor of the defendants because of the plaintiff's failure to prove a prima facie case of premises liability, we conclude that the improper exclusion of prior accident evidence likely affected the result of the trial and there-fore was harmful.[6]

---

[6] Our resolution of the plaintiff's first claim is dispositive of this appeal, and thus we do not reach the plaintiff's other claims.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

