Sandra CHYLINSKI, Plaintiff–
Appellant–Cross–Appellee,

v.

WAL–MART STORES, INC., Defendant–
Appellee–Cross–Appellant.

Nos. 1885, 2100, Dockets 97–
9444(L), 97–9498(XAP).

United States Court of Appeals,
Second Circuit.

Argued June 18, 1998.

Decided July 24, 1998.

, Michael J. Walsh, Hartford, CT (Moukawsher & Walsh, LLC, Hartford, CT, on the brief), for Plaintiff–Appellant–Cross–Appellee.

Richard F. Wareing, Hartford, CT (Thomas J. Rechen, Pepe & Hazard, LLP, Hartford, CT, on the brief), for Defendant–Appellee–Cross–Appellant.

Before: JACOBS and LEVAL, Circuit Judges, and MURTHA, District Judge.*

JACOBS, Circuit Judge:

Plaintiff-appellant Sandra Chylinski sues for personal injuries she sustained while entering a store operated by Wal–Mart Stores, Inc. A Wal–Mart employee directed Chylinski to stand in a spot located within the swing path of an automatic door, which swung open and struck her because its safety devices failed. After the jury returned a substantial verdict for Chylinski, the United States District Court for the District of Connecticut (Dorsey, *J.*) granted judgment as a matter of law in favor of Wal–Mart on the ground *inter alia* that the malfunction of the safety devices was unforeseeable, and that the plaintiff had therefore failed to show that the defendant's conduct was a proximate cause of her injury.

We conclude (1) that there was sufficient evidence for reasonable jurors to render a verdict for the plaintiff, and (2) that the jury instructions were not erroneous. We therefore reverse and remand with instructions to reinstate the verdict for the plaintiff.

## Background

Sam's Club, a division of Wal–Mart Stores, Inc., is a membership-only wholesale warehouse whose customers pay fees to shop there. As Chylinski entered a Sam's Club store in Manchester, Connecticut, she passed through a pair of automatic doors which swing into the store when activated, and encountered an employee who asked her to present her membership card. When Chylinski could not immediately locate her mem-

* Honorable J. Garvan Murtha, Chief Judge of the United States District Court for the District of Vermont, sitting by designation.

bership card, the employee asked her to stand aside to permit other members to enter the store. According to Chylinski, the employee said "[t]here's people trying to come in," took her by the arm, moved her "three to four steps over," and placed her directly behind a second set of automatic doors, located side-by-side with the first pair of doors. As Chylinski continued digging through her pocketbook to find her membership card, someone tried to enter the store through the second set of doors. The door behind Chylinski swung open, rammed her in the back, and pinned her against a low metal railing. The door continued to squeeze Chylinski against the railing until her husband ran over and rescued her from its grip. As a result of this incident, the jury found, Chylinski suffered serious spinal injury.

Chylinski's complaint pleads two distinct negligence claims against Wal–Mart. Chylinski's ordinary negligence claim alleges that Wal–Mart breached its duty to exercise reasonable care by, *inter alia*, requiring her to stand "in close proximity to" the automatic door. Chylinski's "premises liability" claim alleges that Wal–Mart breached its duty to maintain its premises in a reasonably safe condition.

At trial, Chylinski presented evidence that the automatic doors, manufactured by Stanley Magic Door, Inc. ("Stanley"), were designed with two safety devices. The first device uses a "Sentrex" infrared light sensor to detect a person or thing in the swing path of the magic door. If something is detected in the swing path, the device prevents the door from opening. The second device is a "reverse on obstruction" feature that returns the door to a closed position one second after it senses an impact with a person or object. Two of Chylinski's witnesses testified that, in order for the door to have injured her in the way it did, both of these safety devices must have been malfunctioning.

Chylinski also presented evidence that, on numerous occasions, Stanley provided to Wal–Mart a written "Daily Safety Check" that recommended that Wal–Mart "Perform This Safety Check on Each Automatic Swinging Door *Daily*." The safety protocol

gave instructions for testing the Sentrex safety device, including the following:

> With the door closed, walk into the safety zone (the area the door swings through while opening). Have a second person enter the "opening" zone. The door should remain closed as long as you are in the "safety" zone.

Evidence at trial showed that Wal–Mart did not perform this daily safety check on the doors.

At trial, Wal–Mart presented the testimony of three Sam's Club employees who witnessed the accident. Irene Snelgrove testified that she greeted Chylinski when Chylinski entered the store. Snelgrove recalled that, moments before the accident, she "was just about to tell [Chylinski] to move away from the door." Another Wal–Mart employee, Peggy Tew, testified that, before the accident, she heard Irene Snelgrove *and* Donna Landry (a third employee) actually "tell [Chylinski] to move away from the door." Donna Landry, in turn, testified that she and Peggy Tew "both turned at the same time to ask her to move, and Peggy asked her first and she didn't respond, and then I asked her."

The court gave the jury a standard negligence charge, but gave no specific instruction regarding Chylinski's other claim, *i.e.* that Wal–Mart failed to maintain its premises in a reasonably safe condition. After the jury charge but before the jury retired, Wal–Mart objected that the district court had failed to say that Wal–Mart was not liable unless it had notice of the specific defect that caused Chylinski's injury. The court pointed out that an additional charge given separately at that stage would place undue emphasis on a single instruction, and declined to give it. The jury found that Wal–Mart was negligent, that Chylinski suffered $302,900 in damages, that Chylinski's comparative negligence caused 30% of her loss, and that Wal–Mart was liable to Chylinski in the amount of $212,030.

Wal–Mart then moved for judgment as a matter of law, and in the alternative, for a new trial. The district court granted judgment as a matter of law. As to the claim that Wal–Mart failed to maintain its premis-

es in a reasonably safe condition, the court concluded that Chylinski failed to adduce evidence that Wal–Mart had actual or constructive notice of the malfunction of the safety devices. As to the claim that Wal–Mart was otherwise negligent, the court concluded that Chylinski failed to establish proximate cause because there was insufficient evidence that Wal–Mart could have foreseen the malfunction of the safety devices. The court also decided that a new trial was not necessary. These appeals followed.

## Discussion

### A. Chylinski's Appeal.

■ We review *de novo* a district court's post-verdict grant of judgment as a matter of law, and view the evidence in the light most favorable to the non-moving party. *Schlaifer Nance & Co. v. Estate of Andy Warhol*, 119 F.3d 91, 98 (2d Cir.1997). A court may not set aside a jury's verdict unless the jury could not reasonably have reached that verdict on the evidence presented. *Securities and Exchange Commission v. Warde*, 151 F.3d 42, 46 (2d Cir.1998) ("The test is the same as it would be if the question were whether the case should have been permitted to go to the jury."). On appeal, Chylinski argues several grounds for reversal. We conclude that, because the district court mistakenly defined proximate cause to require foreseeability that the safety devices would fail, the district court erred in holding that Chylinski offered insufficient evidence on her ordinary negligence claim. We therefore do not address or decide her remaining grounds for reversal.

■ The Supreme Court of Connecticut has often stated that "the 'test' of proximate cause is whether the defendant's conduct is a 'substantial factor' in producing the plaintiff's injury." *Doe v. Manheimer*, 212 Conn. 748, 758, 563 A.2d 699, 704 (1989) (citing cases). The Court has also recognized that the question of proximate cause is entwined with the question of foreseeability:

The "substantial factor" test, in truth, reflects the inquiry fundamental to all proximate cause questions; that is, whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence.

*Id.* (citations and some internal quotation marks omitted). In order to determine whether a defendant's conduct is the proximate cause of an injury, it is therefore necessary to determine whether the harm caused is within the foreseeable scope of the risk created by the defendant's conduct. *Id.* at 760–61, 563 A.2d at 705; *Stewart v. Federated Dep't Stores, Inc.*, 234 Conn. 597, 607–613, 662 A.2d 753, 759–62 (1995).

■ We think that the jury could reasonably find that Wal–Mart was negligent in placing a person in the swing path of the automatic door, thereby creating a foreseeable risk that someone would be injured, regardless of whether the safety devices were operating. Even if the Sentrex device had detected Chylinski, and had prevented the door from opening, the next customer might have walked into the door and been injured. *See, e.g., Rose v. Port of New York Authority*, 61 N.J. 129, 293 A.2d 371 (1972) (jury could infer negligence if plaintiff walked into automatic door that failed to open). And if the Sentrex device had failed, but the "reverse on obstruction" feature had worked, the door would have struck Chylinski and—one second later—reversed direction to hit the next customer heading through the door. And Chylinski herself, once posted behind the door, was protected only by one or more safety devices that Wal–Mart had failed to test, notwithstanding the manufacturer's advice that daily testing was indicated. A jury could find that the nature of the harm that Chylinski suffered was a foreseeable risk of Wal–Mart's placing Chylinski behind the automatic door.

■ The district court also erred in viewing Wal–Mart's negligence solely in terms of the failed safety devices. Connecticut has adopted the rule set forth in section 442B of the Restatement (Second) of Torts:

[W]here the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of

liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct.

*Stewart,* 234 Conn. at 607–08, 662 A.2d at 759 (quoting Restatement (Second) of Torts § 442B (1965)); *see also Doe v. Manheimer,* 212 Conn. at 759, 563 A.2d at 704. Placing Chylinski in the swing path of the automatic door created the risk of the harm she suffered, and was a substantial factor in bringing about that harm, notwithstanding that the harm was arguably "brought about through the intervention of another force"— the malfunction in the automatic door's safety equipment.

The cases cited by Wal–Mart to support the district court's ruling (including *Stewart* ) involve negligence claims against landowners for injuries sustained as a result of harms intentionally caused by third persons. *See Doe,* 212 Conn. 748, 563 A.2d 699 (1989) (plaintiff sexually assaulted by third party on defendant's property); *Stewart,* 234 Conn. 597, 662 A.2d 753 (1995) (plaintiff's decedent robbed and murdered by a third party in defendant's parking garage). In both cases, the Supreme Court of Connecticut indicated that the question of proximate cause turned on whether the defendant had actual or constructive notice that the dangerous condition of its premises would induce criminal conduct by third parties. *Doe,* 212 Conn. at 760–62, 563 A.2d at 705–06; *Stewart,* 234 Conn. at 610–13, 662 A.2d at 760–62. The categorical ground of distinction here is that the jury could rely on Wal–Mart's own act of negligence (rather than a failure to realize that harm may be inflicted by someone else) and could conclude that Chylinski's injury was therefore within the scope of the risk created by Wal–Mart's placing Chylinski behind the automatic door.

### B.  Wal–Mart's Cross–Appeal.

█  On its cross-appeal, Wal–Mart argues that a new trial is required because the district court erroneously declined to instruct the jury that it needed to find that Wal–Mart had actual or constructive notice of the specific defect in the malfunctioning door that caused Chylinski's injury. We review *de*

*novo* a claim of error in the jury instructions. *Anderson v. Branen,* 17 F.3d 552, 556 (2d Cir.1994). "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *Id.*

█  Wal–Mart's challenge rests on the rule that a landowner cannot be liable for failing to maintain its premises in a reasonably safe condition unless the defendant had actual or constructive notice of the unsafe condition. *See Monahan v. Montgomery,* 153 Conn. 386, 390, 216 A.2d 824, 826–27 (1966). This rule applies in so-called "premises liability" cases. *See, e.g., Morris v. King Cole Stores,* 132 Conn. 489, 492, 45 A.2d 710, 711 (1946); *Claveloux v. Downtown Racquet Club Associates,* 44 Conn.App. 691, 693, 691 A.2d 1112, 1113 (using the term "premises liability"), *appeal granted,* 243 Conn. 917, 701 A.2d 327 (1997). Wal–Mart argues that this rule applies with equal force to an ordinary negligence action. We disagree. To prove ordinary negligence, Chylinski needed to prove only the elements of a cause of action in negligence: duty, breach, causation, and injury. *See RK Constructors, Inc. v. Fusco Corp.,* 231 Conn. 381, 384, 650 A.2d 153, 155 (1994). For reasons already stated in this opinion, proof of proximate cause did not require proof of actual or constructive notice that the safety devices were malfunctioning. Chylinski's ordinary negligence action is grounded in Wal–Mart's negligence in placing her in the swing path of the automatic door, not the dangerous condition created by the malfunctioning safety devices.

### Conclusion

For these reasons, the judgment of the district court is reversed, and the case is remanded with instructions to enter judgment in favor of the plaintiff according to the jury's verdict.