468 S.E.2d 335

Patricia L. PAYNE, Plaintiff Below, Appellant,

v.

Samuel A. GUNDY, Defendant Below, Appellee.

No. 23057.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 23, 1996.

Decided Feb. 15, 1996.

Daniel F. Hedges, Charleston, for Appellant.

Samuel A. Gundy, Branchland, pro se.

McHUGH, Chief Justice:

This appeal is before this Court from the final order of the Circuit Court of Lincoln County, West Virginia, entered on March 27, 1995. The appeal involves an action for assault and battery instituted by the appellant, Patricia L. Payne, against the appellee, Samuel A. Gundy. Although the jury returned a verdict against the appellee for $1,000 in punitive damages, no compensatory damages were awarded to the appellant. The appellant filed a motion for a new trial or, in the alternative, to alter or amend the judgment upon the jury verdict. *W.Va.R.Civ.P.* 59. The motion was denied, and this appeal followed.

This Court has before it the petition for appeal, the brief of the appellant and all matters of record. The appellee has not appeared in this appeal. In addition to challenging the adequacy of the jury verdict, the appellant contends that the elimination of women from the jury through the appellee's use of peremptory strikes violated the appellant's constitutional right to equal protection of the laws. For the reasons stated below, this Court agrees with the appellant in both respects, and we reverse the final order of the circuit court and remand this action for a new trial.

I

According to the testimony adduced at trial, the appellant and the appellee cohabited in a home in Lincoln County for approximately eighteen years. The appellant was employed as a seamstress and the appellee was largely unemployed. No children were born of the relationship. The appellant indicated that she left the home in November 1992 because of repeated beatings by the appellee and fear for her safety. In January

1993, the appellant instituted an action in the Circuit Court of Lincoln County for assault and battery. The relief demanded in the complaint included both punitive and compensatory damages. The appellee never filed an answer to the complaint.

The complaint, as well as the testimony of the appellant at trial, focused upon three alleged incidents of violence committed against the appellant by the appellee. According to the appellant, the first incident occurred in 1990 wherein the appellee became angry and knocked the appellant to the floor and beat the appellant about the head, neck and shoulders. The appellant described the consequences of that incident as follows: "The bruises were on my shoulders, my back. I had knots on my head. I had bruises on my arm. I couldn't use my left arm. I was off of work for two weeks. I could not lift anything, and it was just a bad time." The second incident occurred in October 1991. As to that incident, the appellant stated that the appellee became angry and "busted my mouth open" and then knocked the appellant unconscious. At trial, the appellant indicated that both the incidents of 1990 and October 1991 resulted in treatment of the appellant by a medical doctor. The third incident occurred in March 1992 and, as the appellant testified, consisted of a threat by the appellee to kill the appellant.

The testimony of the appellee, who appeared *pro se* at trial, consisted of a general denial of the incidents described by the appellant. The appellee, however, admitted that he struck the appellant on one occasion. The appellee stated, however, that he struck the appellant because she was hitting him. The appellee further asserted that any physical injuries suffered by the appellant were the result of an automobile accident.

The trial was conducted on October 11, 1994. During the trial, the circuit court ruled in favor of the appellant as a matter of law upon the question of liability. The question of damages was submitted to the jury, and the jury was instructed as to both puni-

tive and compensatory damages. Thereafter, the jury returned a verdict against the appellee for $1,000 in punitive damages. However, the jury awarded no compensatory damages to the appellant. The appellant objected to the jury's verdict at trial and subsequently filed a motion pursuant to *W.Va.R.Civ.P.* 59 for a new trial or, in the alternative, to alter or amend the judgment upon the jury's verdict.[1] As reflected in the final order entered on March 27, 1995, the circuit court denied the motion. This appeal is from the March 27, 1995, order.

II

It should be noted that, the question of liability not being raised in this appeal, the sole issue with regard to the jury verdict concerns the award of zero compensatory damages and the subsequent denial of the appellant's motion for a new trial. In *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 104, 459 S.E.2d 374, 381 (1995), this Court stated that, as a general proposition, "we review a circuit court's rulings on a motion for a new trial under an abuse of discretion standard." *See also Coleman v. Sopher*, 194 W.Va. 90, 96, 459 S.E.2d 367, 373 (1995); syl. pt. 2, *Maynard v. Adkins*, 193 W.Va. 456, 457 S.E.2d 133 (1995); syl. pt. 3, *In re State Public Building Asbestos Litigation*, 193 W.Va. 119, 454 S.E.2d 413 (1994).

Although this Court has stated that in an appeal from an allegedly inadequate damage award "the evidence concerning damages is to be viewed most strongly in favor of the defendant," syl. pt. 1, in part, *Kaiser v. Hensley*, 173 W.Va. 548, 318 S.E.2d 598 (1983), we have "consistently held that where there is uncontroverted evidence of damages and liability is proven, a verdict not reflecting them is inadequate." *Raines v. Thomas*, 175 W.Va. 11, 14, 330 S.E.2d 334, 336 (1985). *See also* syl. pt. 2, *Godfrey v. Godfrey*, 193 W.Va. 407, 456 S.E.2d 488 (1995); syl. pt. 1, *Bennett v. Angus*, 192 W.Va. 1, 449 S.E.2d 62 (1994); syl. pt. 1, *Linville v. Moss*, 189 W.Va.

---

1. Pursuant to *W.Va.R.Civ.P.* 59(a), a new trial may be granted "on all or part of the issues" in an action in which there has been a trial by jury, "for any of the reasons for which new trials have heretofore been granted in actions at law[.]" Moreover, a motion to alter or amend a judgment is recognized in *W.Va.R.Civ.P.* 59(e).

570, 433 S.E.2d 281 (1993); syl. pt. 2, *Fullmer v. Swift Energy Co. Inc.*, 185 W.Va. 45, 404 S.E.2d 534 (1991).

In particular, this Court held in syllabus point 3 of *Biddle v. Haddix*, 154 W.Va. 748, 179 S.E.2d 215 (1971), as follows:

> In a civil action for recovery of damages for personal injuries in which the jury returns a verdict for the plaintiff which is manifestly inadequate in amount and which, in that respect, is not supported by the evidence, a new trial may be granted to the plaintiff on the issue of damages on the ground of the inadequacy of the amount of the verdict.

*See also* syl. pt. 3, *Ellard v. Harvey*, 159 W.Va. 871, 231 S.E.2d 339 (1976).

Similar to this action, the circumstances of *Hagley v. Short*, 190 W.Va. 672, 441 S.E.2d 393 (1994), involved a claim for damages where the defendant struck the plaintiff with his fist. In *Hagley*, the issue of liability was resolved in favor of the plaintiff prior to trial, and the case was submitted to the jury upon the question of damages. Although the evidence was uncontroverted that the plaintiff lost wages and incurred medical expenses as a result of the incident, the jury awarded the plaintiff no damages. Moreover, the plaintiff's motion for a new trial was denied by the circuit court. This Court, in *Hagley*, reversed and remanded the case for a new trial upon the sole issue of damages. We stated, in *Hagley*, that "[e]ven when the evidence is viewed most strongly in favor of the defendant, the jury award of zero damages is still inadequate." 190 W.Va. at 673, 441 S.E.2d at 394.

■ In this action, the circuit court's ruling in favor of the appellant as a matter of law upon the question of liability has not been challenged. The appellee has not appeared in this appeal. In any event, a careful review of the testimony at trial reveals that, the appellee's general denial notwithstanding, the appellant was clearly struck or beaten by the appellee in 1990 and in October 1991, as the appellant alleged in the complaint. Moreover, the appellee admitted during the trial that he struck the appellant on one occasion. The jury returned a verdict against the appellee for $1,000 in punitive damages but awarded no compensatory damages. However, the appellant's testimony indicating that as a result of the 1990 and October 1991 incidents she was seriously injured, experienced pain and suffering, was unable to work for a time and incurred medical expenses, demonstrates that the award of no compensatory damages was inadequate. *Hagley, supra.* Stated another way, viewing the evidence at trial most strongly in favor of the appellee, including the appellee's reference to an automobile accident, the circumstances of which were not developed at trial, leads to the inexorable conclusion that the appellant was entitled to compensatory damages from the appellee as a result of the beatings. Certainly, this Court's admonition in syllabus point 1 of *Garnes v. Fleming Landfill, Inc.*, 186 W.Va. 656, 413 S.E.2d 897 (1991), against the award of punitive damages in the absence of an award of compensatory damages *a fortiori* warrants reversal of the jury verdict in this action.

■ Accordingly, this Court is of the opinion that the circuit court abused its discretion in denying the appellant's Rule 59 motion for a new trial with regard to the adequacy of the jury verdict. As this Court held in syllabus point 4 of *Richmond v. Campbell*, 148 W.Va. 595, 136 S.E.2d 877 (1964):

> Rule 59(a), R.C.P., provides that a new trial may be granted to any of the parties on all or part of the issues, and in a case where the question of liability has been resolved in favor of the plaintiff leaving only the issue of damages, the verdict of the jury may be set aside and a new trial granted on the single issue of damages.

Specifically, in view of the requirement of a relationship or nexus between punitive damages and compensatory damages, *see Garnes, supra*, we direct that the award of $1,000 in punitive damages against the appellee be set aside in order that both punitive and compensatory damages may be considered again upon retrial. In so holding, we suggest that the parties, and especially the appellant, be more attentive to detail with regard to the question of lost wages and medical expenses. The tangential manner in which those matters were addressed below

by counsel for the appellant made review by this Court exceedingly difficult.

### III

In addition to challenging the adequacy of the jury verdict, the appellant contends that the elimination of women from the jury through the appellee's use of peremptory strikes violated the appellant's constitutional right to equal protection of the laws. Specifically, the record indicates that upon the day of trial the jury pool in attendance consisted mostly of men, and of the twelve individuals called to the jury, nine were male and three were female. Each side then exercised three peremptory strikes in order to arrive at a jury of six to deliberate upon the action. Two of the appellee's three peremptory strikes were used to strike women from the jury.

During the jury selection process, the appellant moved to disqualify the jury upon the ground that the appellee's two peremptory strikes were based solely upon gender. In response to the trial judge's inquiry concerning those strikes, the appellee stated that he "just went down the list." The circuit court denied the motion to disqualify the jury and refused to grant relief when the gender issue was raised again in the appellant's Rule 59 motion for a new trial.

■ The right to equal protection of the laws is, of course, found in the Fourteenth Amendment to the Constitution of the United States. That right is also secured by law in this State. As this Court recently articulated in *Appalachian Power Company v. State Tax Department,* 195 W.Va. 573, 594, 466 S.E.2d 424, 445 (1995): "The Due Process Clause of Section 10 of Article III of the West Virginia Constitution incorporates the right to equal protection." [2] In *Appalachian Power Company,* we cited syllabus point 3 of *Robertson v. Goldman,* 179 W.Va. 453, 369 S.E.2d 888 (1988), which states: "The concept of equal protection of the laws is inherent in article three, section ten of the West Virginia Constitution, and the scope and application of this protection is coextensive or broader than that of the fourteenth amendment to the United States Constitution." [3]

---

2. As stated in U.S. Const. amend XIV, § 1:

   No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

   (quoted in relevant part).

   Moreover, as stated in *W.Va. Const.* art. III, § 10: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers."

3. In *Appalachian Power Company,* we articulated the following general methods of analysis in the context of equal protection:

   We have developed what are now familiar doctrines to implement the equal protection command of Section 10. If the challenged classification affects the exercise of a fundamental right or is based upon a constitutionally suspect criterion, the law will not be sustained unless the State can prove that the classification is necessary to the accomplishment of a compelling state interest. *E.g., Lewis v. Canaan Valley Resorts, Inc.,* 185 W.Va. 684, 691, 408 S.E.2d 634, 641 (1991); *Women's Health Center v. Panepinto,* 191 W.Va. 436, 446 S.E.2d 658 (1993); *See generally* Robert M. Bastress, The West Virginia Constitution 88–92 (1995). The list of suspect criteria includes race, national origin, and alienage, and the scrutiny to

   be applied to laws that engage in such distinctions is the most exacting. Robert M. Bastress, *supra* at 88–92. Our cases have also imposed a heightened standard of review, what we label 'intermediate scrutiny,' on classifications based on gender or illegitimacy. Under that standard, the State must show that the differential treatment of a gender-or illegitimacy-defined group is substantially related to an important governmental interest. *E.g., Israel by Israel v. W.Va. Secondary Schools Activities Comm'n,* 182 W.Va. 454, 388 S.E.2d 480 (1989); *Shelby J.S. v. George L.H.,* 181 W.Va. 154, 381 S.E.2d 269 (1989). As a practical matter, this intermediate standard operates much more closely to the compelling interest end of the analytical spectrum than to the third standard of review, that which applies to all classifications not affecting a fundamental right or some suspect or quasi-suspect criterion. Under that latter standard, a governmental classification will be sustained so long as it 'is rationally related to a legitimate state interest.' *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313, 320 (1985); *Donley v. Bracken,* 192 W.Va. 383, 389, 452 S.E.2d 699, 705 (1994); *Lewis, supra.* The presumption of validity that attends the use of the "rational relationship" rule applies with special force to social and economic enactments.

   *Appalachian Power Company,* 195 W.Va. at 594, 466 S.E.2d at 445.

Both federal and West Virginia concepts of equal protection have been applied in the context of race with regard to the use of peremptory strikes in the jury selection process. In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court of the United States confirmed that the right to equal protection of the laws forbids a prosecutor to peremptorily challenge potential jurors solely on account of their race. The reasoning of *Batson* was reflected in the opinion of this Court in *State v. Marrs*, 180 W.Va. 693, 379 S.E.2d 497 (1989). As syllabus points 2 and 3 of *Marrs* state:

> 2. To establish a prima facie case for a violation of equal protection due to racial discrimination in the use of peremptory jury challenges by the State, 'the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.' [Citations omitted.] *Batson v. Kentucky*, 476 U.S. 79 at 96, 106 S.Ct. 1712 at 1722, 90 L.Ed.2d 69 (1986).

> 3. The State may defeat a defendant's prima facie case of a violation of equal protection due to racial discrimination in selection of a jury by providing nonracial, credible reasons for using its peremptory challenges to strike members of the defendant's race from the jury.

*See also* syl. pts. 7 and 8, *State v. Kirkland*, 191 W.Va. 586, 447 S.E.2d 278 (1994); syl. pts. 2 and 3, *State v. Bass*, 189 W.Va. 416, 432 S.E.2d 86 (1993); *State v. Harris*, 189 W.Va. 423, 432 S.E.2d 93 (1993). *See also* Jay M. Zitter, Annotation, *Use of Peremptory Challenges to Exclude Ethnic and Racial Groups, Other than Black Americans, from*

*Criminal Jury–Post–Batson State Cases*, 20 A.L.R. 5th 398 (1994).

The subsequent decision of the Supreme Court of the United States in *J.E.B. v. Alabama*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), extending the principles of *Batson* to the context of gender discrimination, is dispositive of the issue raised in this action. In *J.E.B.*, the State of Alabama, on behalf of a mother of a minor child, brought an action for paternity and child support against the putative father. During the jury selection process at trial, the State used its peremptory strikes to remove males from the jury. As a result, all the selected jurors were female. The jury returned a verdict in favor of the State.

Citing *Batson*, the putative father, in *J.E.B.*, asserted that the State's use of peremptory strikes constituted illegal discrimination upon the basis of gender. The Alabama courts rejected that assertion. The Supreme Court of the United States, however, reversed. Relying upon the logic and reasoning of *Batson*, the Supreme Court held, in *J.E.B.*, that "[i]ntentional discrimination upon the basis of gender by state actors [in the use of peremptory strikes during the jury selection process] violates the Equal Protection Clause." 511 U.S. at ——, 114 S.Ct. at 1422, 128 L.Ed.2d at 98. As the Court, in *J.E.B.*, made clear:

> When state actors exercise peremptory challenges in reliance on gender stereotypes, they ratify and reinforce prejudicial views of the relative abilities of men and women. Because these stereotypes have wreaked injustice in so many other spheres of our country's public life, active discrimination by litigants on the basis of gender during jury selection 'invites cynicism respecting the jury's neutrality and its obligation to adhere to the law.' *Powers v. Ohio*, 499 U.S. [400], at 412, 111 S.Ct. [1364], at 1371 [113 L.Ed.2d 411 (1991)]. The potential for cynicism is particularly acute in cases where gender-related issues are prominent, such as cases involving rape, sexual harassment, or paternity. Discriminatory use of peremptory challenges may create the impression that

the judicial system has acquiesced in suppressing full participation by one gender or that the 'deck has been stacked' in favor of one side. * * * Because gender and race are overlapping categories, gender can be used as a pretext for racial discrimination. Allowing parties to remove racial minorities from the jury not because of their race, but because of their gender, contravenes well-established equal protection principles and could insulate effectively racial discrimination from judicial scrutiny.

511 U.S. at ——, ——, 114 S.Ct. at 1427, 1430, 128 L.Ed.2d at 104, 107 (footnote omitted).

In *J.E.B.*, the Supreme Court of the United States fashioned a means, comparable to that set forth in *Batson*, for a trial court to consider assertions of discrimination upon the basis of gender in the use of peremptory strikes. The Supreme Court, in *J.E.B.*, stated:

As with race-based *Batson* claims, a party alleging gender discrimination must make a prima facie showing of intentional discrimination before the party exercising the challenge is required to explain the basis for the strike. *Batson*, 476 U.S., at 97, 106 S.Ct., at 1723. When an explanation is required, it need not rise to the level of a 'for cause' challenge; rather, it merely must be based on a juror characteristic other than gender, and the proffered explanation may not be pretextual.

511 U.S. at ——–——, 114 S.Ct. at 1429–30, 128 L.Ed.2d at 106–07.

The holding and principles of *J.E.B.* have been recognized or followed in a number of subsequent state court decisions. *Allen v. State*, 659 So.2d 135 (Ala.Crim.App.1994); *State ex rel. Romley v. Superior Court*, 181 Ariz. 271, 889 P.2d 629 (Ct.App.1995); *Cleveland v. State*, 318 Ark. 738, 888 S.W.2d 629 (1994); *People v. Gandy*, 878 P.2d 68 (Colo. Ct.App.1994); *Martins v. Connecticut Light and Power Company*, 35 Conn.App. 212, 645 A.2d 557 (1994); *Howard v. State*, 638 So.2d 213 (Fla.Dist.Ct.App.1994); *People v. Blackwell*, 164 Ill.2d 67, 207 Ill.Dec. 44, 646 N.E.2d 610 (1995); *Koo v. State*, 640 N.E.2d 95 (Ind.Ct.App.1994); *State v. Timley*, 255 Kan.

286, 875 P.2d 242 (1994); *State v. Ford*, 643 So.2d 293 (La.Ct.App.1994); *Commonwealth v. Fruchtman*, 418 Mass. 8, 633 N.E.2d 369, cert. denied, —— U.S. ——, 115 S.Ct. 366, 130 L.Ed.2d 319 (1994); *State v. Hayden*, 878 S.W.2d 883 (Mo.Ct.App.1994); *People v. Garcia*, 163 Misc.2d 245, 620 N.Y.S.2d 237 (1994); *State v. Turner*, 879 S.W.2d 819 (Tenn.1994); *Dominguez v. State Farm Insurance Company*, 905 S.W.2d 713 (Tex.Ct.App.1995); *Robertson v. Commonwealth*, 18 Va.App. 635, 445 S.E.2d 713 (1994); *In re Paternity of Codey M.R.*, 186 Wis.2d 580, 522 N.W.2d 222 (Ct.App.1994). *See also* 47 Am.Jur.2d *Jury* § 245 (1995); Note, *Beyond Batson: Eliminating Gender–Based Peremptory Challenges*, 105 Harv.L.Rev. 1920 (1992).

Importantly, the principles of *J.E.B.* have been applied to civil as well as criminal cases. *Dominguez v. State Farm Insurance, supra; Martins v. Connecticut Light and Power, supra (J.E.B.* applies to cases "in which the government is a party." 35 Conn.App. at 226, 645 A.2d at 566). *See also J.E.B.*, n. 1.

■ The petition for appeal before this Court asserts that "once the issue was raised by the plaintiff at the time of the trial, the duty was upon the defendant to articulate a gender-neutral reason [or] explanation for use of the first two peremptory strikes to strike women." We agree and hold that it is a violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States and article III, section 10, of the Constitution of West Virginia for a party in a civil action to purposefully eliminate potential jurors from a jury through the use of peremptory strikes solely upon the basis of gender.

■ Specifically, this Court holds that to establish a prima facie case of unlawful gender discrimination in the jury selection process through the use of peremptory strikes, the party moving to disqualify the jury must show: (1) that the opposing party has exercised peremptory strikes to eliminate potential jurors of the movant's gender, and (2) that the circumstances raise an inference that the opposing party used the peremptory strikes to exclude from the jury potential

jurors solely upon the basis of their gender. The opposing party may defeat a prima facie case of such unlawful discrimination by providing non-discriminatory, credible reasons for using the peremptory strikes to eliminate members of the moving party's gender from the jury. Although the reasons or explanations of the opposing party for striking members of the moving party's gender from the jury need not rise to the level of a "for cause" challenge, the trial court has the discretion to conduct an evidentiary hearing upon the motion to disqualify the jury because of unlawful gender discrimination. *See* syl. pt. 9, *Kirkland, supra.*

In so holding, we are extending the logic and reasoning of *J.E.B.* to this State's jurisprudence, as we did in *State v. Marrs, supra,* with regard to the opinion of the Supreme Court of the United States in *Batson.*[4] In fact, inasmuch as this action involves a case of alleged domestic assault and battery, it comports with the admonition of *J.E.B.,* set forth above, that the potential for cynicism in the face of gender discrimination in the jury selection process "is particularly acute in cases where gender-related issues are prominent, such as cases involving rape, sexual harassment, or paternity." *J.E.B.,* 511 U.S. at ——, 114 S.Ct. at 1427, 128 L.Ed.2d at 104. Moreover, this Court has previously applied the principles of equal protection to gender related issues in other areas of the law. Syl. pt. 3, *State ex rel. Lambert v. State Board of Education,* 191 W.Va. 700, 447 S.E.2d 901 (1994); syl. pt. 5, *Israel v. Secondary Schools Activities Commission,* 182 W.Va. 454, 388 S.E.2d 480 (1989).

 Here, the appellant moved to disqualify the jury upon the ground that the appellee's peremptory strikes were based solely upon gender. In response to the trial judge's inquiry concerning those strikes, the appellee stated that he "just went down the list." In view of the cursory and ambiguous nature of that response, the circuit court should have conducted further inquiry.

---

4. It should be noted that the per curiam opinion of the Supreme Court of the United States in *Purkett v. Elem,* 514 U.S. ——, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), indicating that a prosecutor's peremptory strike of a black juror because of a beard and "long unkempt hair" was

Thus, the circuit court acted prematurely in refusing the appellant's motion to disqualify the jury, and, accordingly, the verdict of the jury should be set aside.

Upon all of the above, therefore, the final order of the Circuit Court of Lincoln County, entered on March 27, 1995, is reversed, and this Court remands this action with directions that the verdict of the jury, including the award of $1,000 in punitive damages, be set aside. The circuit court shall proceed with this action in conformity with the principles set forth in this opinion.

Reversed and remanded.

nondiscriminatory, has stirred a debate concerning the ability to prove that a particular peremptory strike was impermissible. *See* vol. 82 ABA *Journal* 20 (February 1996). The *Purkett* case, however, does not affect the principles expressed in this opinion.