**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GERALD LEE PULICE,
Plaintiff-Appellee,

v.

WOOD/CHUCK CHIPPER CORPORATION,
Defendant-Appellant,                                    No. 96-2026

and

SAFETY TEST AND EQUIPMENT
COMPANY, INCORPORATED,
Defendant.

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, District Judge.
(CA-95-55)

Argued: May 8, 1997

Decided: June 23, 1997

Before WILKINSON, Chief Judge, and RUSSELL and
MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** J. Greg Goodykoontz, STEPTOE & JOHNSON, Clarks-
burg, West Virginia, for Appellant. William Lee Frame, WILSON,

FRAME, BENNINGER & METHENEY, Morgantown, West Virginia, for Appellee. **ON BRIEF:** Jacqueline A. Wilson, STEPTOE & JOHNSON, Clarksburg, West Virginia, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The Wood/Chuck Chipper Corporation (Wood/Chuck) appeals a $123,134.13 jury verdict in favor of plaintiff Gerald Pulice, who lost all of the fingers on his left hand in a wood chipper accident. Wood/Chuck claims that the district court erred in giving a supplemental jury instruction on damages, erred in crafting the verdict form, erred in its instructions on product liability, and erred in dealing with a reference to another lawsuit. Finally, Wood/Chuck challenges the sufficiency of the evidence. We find no merit in Wood/Chuck's arguments and therefore affirm.

I.

Wood/Chuck is a North Carolina corporation engaged in the design and manufacture of commercial wood chippers. In 1986 Wood/Chuck sold thirty chippers to the West Virginia Department of Highways (WVDOH). On May 3, 1993, Pulice, a WVDOH laborer, was working with a crew clearing brush in Marion County, West Virginia. The discharge chute on the Wood/Chuck chipper the crew was using became clogged. The crew turned the chipper off and lifted the discharge chute to unclog it. Raising the discharge chute exposes the area where the cutting mechanism is located. Because of the chipper's flywheel design, the cutter blades continue to rotate a few minutes after the chipper is turned off. In this case, as soon as the chute was raised, Pulice inserted his left hand to remove the clogged debris. The whirling cutter blades caught Pulice's glove and fingers, and the

2

thumb, fourth, and fifth fingers on his left hand were severed completely. The second and third fingers were crushed and later had to be amputated. Pulice testified that he did not know the cutter blades on the chipper kept spinning after the motor was turned off.

After Pulice filed an action against Wood/Chuck in state court alleging that the chipper was defective, Wood/Chuck removed the case to the United States District Court for the Northern District of West Virginia. During a jury trial that lasted three days, the parties stipulated that Pulice's medical expenses were $13,097.33 and that his lost income was $10,036.80. When the jury brought out its verdict form the <u>first</u> time, it had concluded that the chipper was defective and that Pulice himself was guilty of some negligence. The jury apportioned fault as follows: Pulice at 10 percent, the WVDOH at 60 percent, and Wood/Chuck at 30 percent. The jury then awarded Pulice $23,134.13, which represented the stipulated medical expenses and lost income. The district court noticed on the verdict form that the jury had made a "0" award for "other damages." As a result, the district court instructed the jury to "return to the jury room to consider the element of other damages" and to "award something for that category of damages." The jury thereafter returned with an amended verdict form, awarding Pulice $123,134.13 which included the previous award plus $100,000 for "other damages." The district court denied Wood/Chuck's post-trial motions, and Wood/Chuck now appeals.

II.

Wood/Chuck first argues that the district court abused its discretion when it examined the jury's initial verdict form and then instructed the jury to reconsider and award something for "other damages." When the jury first submitted its verdict form, it found Wood/Chuck liable, awarded Pulice $23,134.13 in damages for medical expenses and lost income, but placed a zero on the line for "other damages." After reviewing the form, the district court gave the following instruction:

> Because you have found in favor of the plaintiff on the issue of liability and have awarded him medical expenses and past lost income, the Court instructs you that you are to return to your jury room to consider the element of other damages, as

3

that is explained in my instructions to you, and I further instruct you that you must award something for that category of other damages because of the finding of liability, and the Court will not instruct you with regard to any amount. That is completely within your discretion, but you must award something to the plaintiff in recognition of the injury and the liability finding that you made.

We believe that the court's procedure and instructions were appropriate.

The district court applied West Virginia law. In West Virginia "where there is uncontroverted evidence of damages and liability is proven, a verdict not reflecting them is inadequate." Payne v. Gundy, 468 S.E.2d 335, 338 (W. Va. 1996) (citation omitted). The Supreme Court of Appeals of West Virginia has noted that"subjective though pain and suffering awards may be, the jury must give some reasonable compensation for pain and suffering to victims when such pain and suffering have been demonstrated, and an award which is so unreasonable that its adequacy cannot be debated by fair-minded men must be set aside." Freshwater v. Booth, 233 S.E.2d 312, 316 (W. Va. 1977); see also Linville v. Moss, 433 S.E.2d 281, 285 (W. Va. 1993) (noting that a verdict will be considered inadequate if the "sum [is] so low that under the facts of the case reasonable men cannot differ about its adequacy") (internal quotation marks and citation omitted).

The jury's original verdict awarded nothing for Pulice's "other damages," that is, for pain and suffering. The award was limited to the sum of stipulated medical expenses and past lost income. In light of the evidence the district court concluded that the original award was inconsistent with the jury's finding of liability. The evidence supports this conclusion. Pulice remained conscious during the accident. For several months after his injury, Pulice was required to soak the stump of his left hand three times a day, and he took medication to help alleviate the pain. He also suffered mental anguish and eventually sought psychological counseling. For a time he was unable to perform basic functions like dressing himself and eating. After eight months of medical treatment and rehabilitation, Pulice returned to a job with the WVDOH, where he must be provided with special

4

accommodations. Finally, Pulice has a 54 percent permanent disability as a result of the wood chipper accident.

This evidence demonstrates that the accident caused Pulice a great deal of pain and suffering. Thus, the district court did not abuse its discretion in instructing the jury to deliberate further and "award something for that category of other damages." See Godfrey v. Godfrey, 456 S.E.2d 488, 492 (W. Va. 1995) (holding that jury's verdict was inadequate because it did not make required award for plaintiff's pain and suffering).

III.

In the verdict form interrogatory addressing comparative fault, the district court listed Pulice, Wood/Chuck, and "others." The WVDOH was written in beside the word "others." J.A. 25. Wood/Chuck argues that the district court abused its discretion by allowing "others" to be considered for comparative fault. The inclusion of "others" (specifically, WVDOH) was incorrect, Wood/Chuck says, because neither Wood/Chuck nor Pulice made any claims against the WVDOH. Wood/Chuck's argument is without merit.

In Bowman v. Barnes, 282 S.E.2d 613, Syllabus pt. 3 (W. Va. 1981), the Supreme Court of Appeals of West Virginia held:

> In order to obtain a proper assessment of the total amount of the plaintiff's contributory negligence under our comparative negligence rule, it must be ascertained in relation to all of the parties whose negligence contributed to the accident, and not merely those defendants involved in the litigation.

See Miller v. Monongahela Power Co., 403 S.E.2d 406, 412 (1991) (noting that the trial court erred by not allowing the defendant to argue the fault of the employer even though the employer was not a party to the case); Vannoy v. Uniroyal Tire Co. , 726 P.2d 648, 650 (Id. 1985) ("It is established without doubt that, when apportioning negligence, a jury must have the opportunity to consider the negligence of all parties to the transaction, whether or not they be parties to the lawsuit and whether or not they can be liable to the plaintiff or

5

the other tortfeasors either by operation of law or because of a prior release.").

At trial Wood/Chuck attempted to prove that Pulice was a trained, skilled, and experienced equipment operator who, with full knowledge and appreciation of the hazards, reached into the chipper. Pulice, however, testified that he did not know the blades kept spinning after the chipper was turned off. In particular, he said that the WVDOH did not train him in the use of the chipper and that he had very little experience operating it. Under these circumstances, the negligence or fault of others, specifically the WVDOH, was an important consideration in determining the percentage of negligence or fault of Pulice and Wood/Chuck. Therefore, we affirm the district court's decision to list "others" (i.e., the WVDOH) in the comparative fault interrogatory.

IV.

Wood/Chuck next argues that the district court gave an erroneous instruction on what Pulice had to prove to establish that the chipper was defective. In Morningstar v. Black & Decker Manufacturing Co., 253 S.E.2d 666 (W. Va. 1979), the West Virginia Supreme Court referred to a New Jersey decision, Cepeda v. Cumberland Engineering Co., 386 A.2d 816 (N.J. 1978), which used a risk/utility analysis to determine whether a product was defective. One of the seven factors in the risk/utility analysis focuses on the manufacturer's ability to obtain liability insurance. When the district court here instructed the jury that it "may consider" risk/utility, it mentioned only six of the seven factors, omitting the factor dealing with the ability to obtain liability insurance. Several reasons lead us to believe that the omission of this factor was appropriate.

First, in Morningstar the West Virginia court did not adopt the risk/utility analysis as a definitive standard. The court simply mentioned the risk/utility framework in the context of discussing various methods of proving that a product is defective. Thus, Morningstar recognized that the risk/utility analysis "does have a place" in the product liability field but cautioned that the analysis "is not easily susceptible to a jury instruction." Morningstar , 253 S.E.2d at 682. Second, Fed. R. Evid. 411 specifically provides that proof of insurance or non-insurance is not admissible "upon the issue whether the person

6

acted negligently." West Virginia case law is in accord: "the jury should not be apprised in any way that the defendant is not insured against liability . . . ." Kaiser v. Hensley , 318 S.E.2d 598, 601 (W. Va. 1983) (quoting Graham v. Wriston, 120 S.E.2d 713 (1961)). Third, the district court gave several instructions in addition to the one on risk/utility to aid the jury in its determination of whether the Wood/Chuck chipper was defective. These instructions were in line with West Virginia law on product liability. We therefore conclude that the district court did not abuse its discretion in formulating the risk/utility instruction.

V.

Wood/Chuck says that the district court erred in handling the reference to another lawsuit against Wood/Chuck. During the cross-examination of Dennis Beam (president of Wood/Chuck), Pulice's counsel began reading from a complaint filed by another man, Elbert Causey, against Wood/Chuck in South Carolina. Causey alleged that he had lost part of his hand while using a Wood/Chuck chipper. The district court sua sponte stopped the questioning and had a bench conference. At that point Wood/Chuck's counsel said that he had no objection to the questioning as long as it was mentioned that Wood/Chuck was dismissed voluntarily from the South Carolina suit.

The district court decided that the allegations from the South Carolina complaint were not relevant and instructed both parties not to discuss that case. The court then made the following statement to the jury:

> Members of the jury, during the bench conference, I discussed with counsel for both parties what they perceived to be the possible relevance of allegations in a complaint that was filed in another state and did not involve this particular plaintiff.
>
> After listening to what counsel have advised me, I have ruled that allegations -- and that's all they are, mere allegations in another case -- are not relevant in this case, and I will not permit either counsel to inquire of this witness with

7

> regard to the Complaint that has been referenced by Mr. Frame.

Testimony continued without any further mention of the South Carolina case. However, during closing argument Pulice's counsel again mentioned the South Carolina complaint but Wood/Chuck made no objection. In its final instructions the district court told the jury: "Any evidence to which an objection was sustained by the Court during the course of trial, and any evidence ordered stricken by the Court, must be entirely disregarded by you in your deliberation."

Wood/Chuck argues that it should have been permitted to tell the jury that it was voluntarily dismissed from the South Carolina suit. Wood/Chuck contends that it was prejudiced because the jury heard references to the prior litigation during the testimony and again at closing. These references, according to Wood/Chuck, created the impression that Mr. Causey had successfully sued the company in South Carolina for a similar accident. We do not believe that these references gave rise to any reversible error. When the South Carolina complaint was mentioned during the cross-examination of Wood/Chuck's president, the district court immediately instructed the jury that the allegations in that case were not relevant, and we have no reason to believe that the jury did not follow that instruction. Moreover, in light of this clear instruction, there was no reason for the district court to draw further attention to the matter by allowing Wood/Chuck to tell the jury that it had been voluntarily dismissed from the prior suit. When Pulice's counsel mentioned the South Carolina accident during closing argument, Wood/Chuck did not object, and we find no plain error.

VI.

Finally, Wood/Chuck argues that there was insufficient evidence for a reasonable jury to find that its chipper was defective and was the proximate cause of Pulice's injuries. As a result, Wood/Chuck contends that the district court erred in denying its motion for judgment as a matter of law.

The Supreme Court of Appeals of West Virginia has said that product defects fall generally into three categories (that may overlap):

8

design defects, structural defects, and use defects arising out of the lack of, or the inadequacy of, warnings, instructions, and labels. Morningstar, 253 S.E.2d at 682. Wood/Chuck argues that Pulice's main theory was that the Wood/Chuck chipper was defective because of inadequate warnings and manuals. This theory failed, according to Wood/Chuck, because (1) it offered testimony that the chippers had warnings and decals on them when they were delivered to the WVDOH and (2) Pulice himself testified that he had seen a warning on the chipper which said that no one was to operate the machine unless he had been instructed in its safe operation and had read the safety and operating manuals.

The district court did not err in denying Wood/Chuck's motion. First, inadequate warning was not Pulice's only theory. He also offered evidence that the chipper was defective in design. His expert testified that the Wood/Chuck chipper was not reasonably safe because the design of the chipper did not incorporate an interlock device that would stop the cutting mechanism when the discharge chute was open. Second, the jury could have concluded that the warning on the chipper was inadequate because it gave no indication that the rotating cutter blades would continue to turn when the chipper was turned off. Third, the district court properly instructed the jury on alternative ways in which a product may be defective: design defect and "use defectiveness" arising out of the lack of or the inadequacy of warnings, instructions, and labels. The evidence, when measured against the instructions, supports the jury's finding that a defect in the Wood/Chuck chipper proximately caused Pulice's injury.

VII.

The judgment of the district court is

AFFIRMED.

9