IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

_____

No. 19-0010

_____

FILED
November 18, 2020
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

CHRISTOPHER MCKENZIE
Petitioner, Plaintiff Below

v.

DONALD L. SEVIER and CASSANDRA SEVIER
Respondents, Defendants Below

_____

Appeal from the Circuit Court of Marion County
The Honorable Patrick N. Wilson, Judge
Case No. 16-C-160

AFFIRMED, IN PART; REVERSED, IN PART; AND REMANDED

_____

Submitted: October 6, 2020
Filed: November 18, 2020

Samuel D. Madia, Esq.
Jonathan Wesley Prince, Esq.
Shaffer Madia Law, PLLC
Morgantown, West Virginia
Counsel for Petitioner

Gregory H. Schillace, Esq.
Schillace Law Office
Clarksburg, West Virginia
Counsel for Respondents

JUSTICE WALKER delivered the Opinion of the Court.

CHIEF JUSTICE ARMSTEAD and JUSTICE JENKINS concur, in part, and dissent, in part, and reserve the right to file a separate opinions.

# SYLLABUS BY THE COURT

1. "Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syllabus Point 4, *Sanders v. Georgia–Pacific Corp.*, 159 W. Va. 621, 225 S.E.2d 218 (1976).

2. "'Rule 59(a), R.C.P., provides that a new trial may be granted to any of the parties on all or part of the issues, and in a case where the question of liability has been resolved in favor of the plaintiff leaving only the issue of damages, the verdict of the jury may be set aside and a new trial granted on the single issue of damages.' Syl. pt. 4, *Richmond v. Campbell*, 148 W.Va. 595, 136 S.E.2d 877 (1964)." Syllabus Point 2, *Payne v. Gundy*, 196 W. Va. 82, 468 S.E.2d 335 (1996).

3. "In a civil action for recovery of damages for personal injuries in which the jury returns a verdict for the plaintiff which is manifestly inadequate in amount and which, in that respect, is not supported by the evidence, a new trial may be granted to the plaintiff on the issue of damages on the ground of the inadequacy of the amount of the verdict." Syllabus Point 3, *Biddle v. Haddix*, 154 W. Va. 748, 179 S.E.2d 215 (1971).

4. "'Where a verdict does not include elements of damage which are specifically proved in uncontroverted amounts and a substantial amount as compensation

i

for injuries and the consequent pain and suffering, the verdict is inadequate and will be set aside. *Hall v. Groves*, 151 W.Va. 449, 153 S.E.2d 165 (1967).' *King v. Bittinger*, 160 W. Va. 129, 231 S.E.2d 239, 243 (1976)." Syllabus Point 3, *Kaiser v. Hensley*, 173 W. Va. 548, 318 S.E.2d 598 (1983).

5. "We will not find a jury verdict to be inadequate unless it is a sum so low that under the facts of the case reasonable [persons] cannot differ about its inadequacy." Syllabus Point 2, *Fullmer v. Swift Energy Co., Inc.*, 185 W. Va. 45, 404 S.E.2d 534 (1991).

6. "'[T]he trial [court] ... is vested with a wide discretion in determining the amount of ... court costs and counsel fees, and the trial [court's] ... determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that he has abused his discretion.' Syllabus Point 4, in part, *Ball v. Wills*, 190 W.Va. 517, 438 S.E.2d 860 (1993)." Syllabus Point 4, *Collins v. City of Bridgeport*, 206 W. Va. 467, 525 S.E.2d 658 (1999).

WALKER, Justice:

During a neighborhood dispute on July 7, 2015, Donald Sevier punched Christopher McKenzie in the face causing him to fall.  Mr. McKenzie suffered a traumatic brain injury from the impact, and sued Mr. Sevier for the intentional tort of battery.  At trial, the jury found Mr. Sevier liable for battery but rejected other claims including one by Mr. Sevier that Mr. McKenzie had committed a battery by spitting on him.  Although Mr. Sevier was found liable, the jury awarded Mr. McKenzie no damages.  The circuit court ordered each party to bear their own costs, with the exception that the Seviers pay the costs of the jury trial.

Mr. McKenzie claims that the zero-dollar jury award for battery is inconsistent or inadequate and seeks a new trial on damages.  Mr. Sevier argues, primarily, that the jury must have concluded there was a lack of causation between the battery and Mr. McKenzie's resultant brain injury.  But the uncontroverted evidence at trial was not only that the battery caused Mr. McKenzie's brain injury but also that he suffered a substantial injury for which he was not compensated.  So, we find the verdict to be inadequate, reverse the circuit court's order and remand for a new trial on damages.

The Seviers cross-assign as error the circuit court's assessment of jury trial costs and also the court's imposition of sanctions for discovery misconduct.  As to the former, the circuit court was well within its discretion to require the parties to bear their

1

own costs under Rule 54(d) of the West Virginia Rules of Civil Procedure and to order the Seviers to pay the costs of the jury trial under West Virginia Code § 52-1-17(c) (2016). And, given that the Seviers displayed a pattern of discovery misconduct, the circuit court did not abuse its discretion by imposing sanctions in the form of attorney fees.

For these reasons, we affirm, in part, and reverse, in part the December 11, 2018 order denying Mr. McKenzie a new trial on damages and imposing sanctions, and remand for a new trial on damages. And, we affirm the circuit court's September 27, 2018 order assessing costs.

## I.     Factual and Procedural Background

Christopher McKenzie lived across the street from Donald and Cassandra Sevier in Fairmont, West Virginia. On July 7, 2015, Mr. McKenzie was in his yard pruning a tree when Mr. Sevier returned home from work. Mr. Sevier was relaxing in his garage[1] when Mr. McKenzie came down the street with a wheelbarrow. Mr. Sevier yelled to Mr. McKenzie not to dump anything on his property, and Mr. McKenzie went back to his own driveway and resumed his yard work. Mr. Sevier then walked up the street to ensure Mr. McKenzie had not dumped anything on his property and exchanged words with Mr. McKenzie to that effect. Mr. Sevier returned to his garage, but could still see and hear Mr. McKenzie. Next, Mr. McKenzie allegedly made sexual and derogatory comments about

---

[1] Mr. Sevier testified that his garage has a bar, television, and lounge chairs as a separate recreational space from the home.

Mrs. Sevier.[2]  Mrs. Sevier, who had been outside talking to her friend and coworker

Deserae Akers,[3] walked up to Mr. McKenzie's driveway to confront him.

Mr. Sevier observed Mr. McKenzie and Mrs. Sevier cursing and slinging

insulting words at one another.  During that verbal altercation, Mrs. Sevier alleged that Mr.

---

[2] This version of events on July 7, 2015 comes from the testimony of Mr. and Mrs. Sevier, the statements they gave to police, the testimony of the police officers in interacting with Mr. and Mrs. Sevier, and the testimony of Deserae Akers.  Mr. McKenzie does not recall anything about that day due to his brain injury, and his wife, Anna McKenzie, was not home at the time.  We note that Mr. McKenzie's theory at trial was that the Seviers and Ms. Akers concocted a general series of events that were inconsistent both with prior statements and physical evidence.  To the extent possible, we have relayed the events of the battery as the jury heard it, and determined it to have occurred, accounting for those purported inconsistencies in an attempt to be fair to both sides in our statement of the facts.

[3] Despite testimony from both Mr. and Mrs. Sevier that Ms. Akers was the only other person to witness the event, neither informed police that she had witnessed it. Rather, they testified that Ms. Akers was physically present and the police could have deduced that she had witnessed it.  Ms. Akers testified that she had gone inside to check on the children when officers arrived.  Officers testified that when they arrived on the scene, Mr. and Mrs. Sevier were the only persons present, and they arrived six minutes after the call was placed. Neither Mr. or Mrs. Sevier identified Ms. Akers as a potential witness when speaking to officers, and Ms. Akers never contacted the police to tell them what she observed.

In the course of the underlying proceedings, when asked to identify every person present at any time on the date of the event, Mrs. Sevier's discovery responses in October 2016 – one year after the event – stated "[t]his defendant does not specifically recall any people at her home on that day than her immediate family."  That discovery response was not supplemented to disclose the presence of Ms. Akers until November 17, 2017, when the case was originally intended to proceed to trial at the end of 2017.  At the time of trial, the police officers who testified were still unaware of Ms. Akers's identity.

This omission, the late-added allegation that Mr. McKenzie lunged at Mr. Sevier before he punched him, as discussed in footnote 4, and an allegation that Mr. and Mrs. Sevier intentionally delayed calling an ambulance served as the basis for Mr. McKenzie's claim for conspiracy, as it appeared the Seviers attempted to cover up the events of that evening.

McKenzie made a derogatory comment about her daughter and continued making sexual and derogatory comments to her. At that point, Mr. Sevier left his garage to get his wife because he was tired of listening to them argue and Mr. McKenzie was "drunk all the time." When Mr. Sevier placed an arm in front of his wife to, as he described, drag her back into their garage, Mr. McKenzie reportedly spat on Mr. Sevier.[4] In response, Mr. Sevier punched Mr. McKenzie in the face.[5] Mr. Sevier has conceded that Mr. McKenzie never attempted to strike him or his wife with his hands or fists.

---

[4] There was a dispute at trial as to whether Mr. McKenzie spat on Mr. Sevier, and the jury ultimately concluded that Mr. McKenzie had not battered Mr. Sevier by spitting on him. Mr. and Mrs. Sevier both testified that he spat on his face, neck, and shirt. The day after the incident, detectives requested Mr. Sevier's shirt to test for DNA, the Seviers stated that it had already been laundered or alternately, that Mr. Sevier could not recall which of his work shirts had been spat on. Ms. Akers did not report seeing Mr. McKenzie spit at Mr. Sevier.

Mr. Sevier also alleged that Mr. McKenzie lunged and spat at him at the same time. The jury heard evidence that Mr. Sevier did not allege that Mr. McKenzie had lunged at him when he called the police when Mr. McKenzie was unresponsive, nor did he allege that Mr. McKenzie had lunged at him in the written statement he gave to police. Mr. Sevier testified that he would have told one of the officers in an oral statement. The police officers who arrived at the scene testified that it was not in their notes that either Mr. or Mrs. Sevier told them Mr. McKenzie lunged at Mr. Sevier, and had they stated that it would have been written down.

[5] Respondents' brief suggests that Mr. Sevier punched Mr. McKenzie upon hearing him make a comment about Mr. Sevier's daughters, one of whom has Down Syndrome. As noted above, Mrs. Sevier testified that Mr. McKenzie made a comment to her about her daughter before Mr. Sevier was present. Mr. Sevier's own testimony was that, "I'm sure of some sort he said something about one of them, because he always does, but I don't recall on that evening that he said it." And, Mr. Sevier testified that he punched Mr. McKenzie solely in reaction to being spat on:

After the impact, Mr. McKenzie stumbled backward, hit his heel on the lip of the driveway,[6] fell, and hit his head. After hitting his head, Mr. McKenzie was unresponsive and bleeding from a head wound. Mr. and Mrs. Sevier began walking back to their garage when Ms. Akers informed them that Mr. McKenzie appeared to be seriously injured. Mr. Sevier called the police on the non-emergency line, and Officer Moran then Officer Staley arrived at the scene shortly after. When Officer Moran arrived, Mr. McKenzie was being supported by Mrs. Sevier, but was unresponsive. Mr. McKenzie had clotted blood on the back of his head and there was blood pooled in the driveway. Officer Moran, in assisting EMS, observed it was apparent upon cleaning the wound that there was damage to the skull because a large portion of the skull had buckled, and he observed gray, gelatinous material that he believed to be brain matter.

When he arrived at the scene, Officer Staley called for a detective to come because Mr. McKenzie's condition looked so severe that it could be terminal; he was

---

> Q. You agree with me that statement indicates you did what you did because he spit on you; right?
>
> A. Yes.
>
> Q. Nothing else? Right?
>
> A. Yes.

[6] It appears from the evidence introduced at trial that the main road through the neighborhood had been stripped prior to paving. Officer Staley testified that he used an ink pen for reference to give a scale as to the depth of the lip, and testified that the lip was not very deep, measuring an inch or an inch-and-a-half.

unresponsive, in a pool of blood, and what looked like brain matter was present. Though Mr. and Mrs. Sevier gave written statements to the police officers, when the detective, Sergeant Hudson, arrived at the scene Mr. Sevier informed him that neither he nor his wife would be giving any statements as they had retained an attorney who advised them against it.

Mr. McKenzie was transported by EMS to Ruby Memorial Hospital in Morgantown. Sergeant Hudson got consent to access Mr. McKenzie's medical records from his admission to the ICU and his lab results, which showed Mr. McKenzie had a blood alcohol level of 0.196.[7] Mr. McKenzie, in addition to bruises and abrasions around his eye, suffered a left brain stem hemorrhagic stroke, an intracranial hemorrhage, a subdural hematoma, and a subarachnoid hemorrhage. After being hospitalized for nine days, Mr. McKenzie was discharged to HealthSouth, an inpatient physical and occupational rehabilitation setting. Mr. McKenzie remained in inpatient treatment at HealthSouth until August 12, 2015.

Mr. and Mrs. McKenzie sued Mr. and Mrs. Sevier, alleging the intentional tort of battery against Mr. Sevier, negligence as to Mrs. Sevier, civil conspiracy between Mr. and Mrs. Sevier to cover up the events of July 7, 2015, and loss of consortium. Mr. and Mrs. Sevier counterclaimed for violation of the insulting words statute as to both Mr.

---

[7] The jury heard alternately that Mr. McKenzie had a blood alcohol content of 0.196, 0.195, and 0.192.

6

and Mrs. Sevier and battery against Mr. McKenzie for spitting on Mr. Sevier. Eventually, Ms. McKenzie voluntarily dismissed her loss of consortium claim, the negligence claim as to Mrs. Sevier was dismissed, and the case proceeded to trial.

Dr. Kokab Darbondi, the primary care physician who treated Mr. McKenzie both before and after the July 7 incident, was the only medical expert witness offered by either party. Although Mr. McKenzie did not suffer any broken bones in his face from being punched, Dr. Darbondi testified that the traumatic brain injuries he suffered were sustained as a result of the July 7 incident. She also testified that the medical care he received during his admission at Ruby Memorial, the occupational and physical therapy completed after his discharge from the hospital, and all of his follow-up visits with neurosurgery for additional imaging were medically necessary, as was his treatment with an ophthalmologist.

Although Mr. McKenzie had to be treated at HealthSouth for his chronic health issues such as diabetes, as well as for a subsequent fall he sustained, Dr. Darbondi testified that he would not have required that treatment from HealthSouth but for the July 7 injury. And, Dr. Darbondi testified that although Mr. McKenzie had a prostate surgery that was not related to the July 7 incident, he was required to return to inpatient physical and occupational therapy upon discharge because he was too weak and it was not safe for him to return home. Dr. Darbondi attributed the second stint in the rehab facility to the July 7 incident.

7

As to neurological deficits, Dr. Darbondi testified that Mr. McKenzie has foot drop, imbalance and dizziness, right-sided motor weakness, struggles to elevate his right leg, abnormal eye movement, trouble with depth perception, double vision, worsening memory, and slurred speech. Dr. Darbondi further testified that those injuries are permanent and directly related to the brain injury. But she also testified that those neurological deficits can also be progressive side effects of long-term alcoholism or long-term opioid use. And, Dr. Darbondi agreed that Mr. McKenzie had a prior diagnosis of alcoholism and that he had been prescribed opioid medications. It is unclear from the record, however, what portion of those opioid medications are attributable to Mr. McKenzie's pain management of his brain injury since Dr. Darbondi also testified that it would be reasonable for Mr. McKenzie to have been in pain and to continue to be in pain.

Finally, Dr. Darbondi testified that as to Mr. McKenzie's medical expenses, she could not testify as to what the charges were from the hospital or HealthSouth because she does not do billing, but she could ascertain that they would be medically necessary for treatment of Mr. McKenzie's brain injury given the descriptions of treatment.

Mr. McKenzie, though he did not recall the events of July 7 testified that he is unable walk without the assistance of a cane, walker, or wheelchair; cannot shower by himself; has difficulty using the restroom without help; cannot have sex with his wife; is unable to play with his grandchild; and cannot do any of the normal daily activities he used to do. His speech is not the same as it was before the incident, and he has not been able to

drive a car due to the vision and judgment issues he now suffers. He reported that he suffers falls twenty to thirty times a year, even when using walking assistance devices and those falls have caused injuries requiring sutures. Mrs. McKenzie reported the same as to Mr. McKenzie's limitations as a result of the incident and that Mr. McKenzie struggles with understanding that he can no longer be independent.

At the conclusion of evidence and closing arguments, the circuit court gave the following charge to the jury with respect to battery and causation:

> The Court instructs the jury that a person commits battery when they unlawfully and intentionally make physical contact of an insulting or provoking nature to the person of another or unlawfully and intentionally cause physical harm . . . to another person.

> The Court instructs the jury that, one of the questions to be determined by you in this case is whether or not Donald Sevier acted in self-defense, so as to justify his acts. Under the laws of this State if Donald Sevier was not the aggressor and had reasonable grounds to believe and actually did believe that he was in imminent danger of bodily harm in which he could save himself by using reasonable force against his assailant, he had the right to employ reasonable force in order to defend himself.

> ****

> The Court instructs the jury that if you find that Donald Sevier is liable to Christopher McKenzie, that the measure of damages for the injury done is the amount that will compensate and make Christopher McKenzie whole.

> If you decide Christopher McKenzie has proven that Donald Sevier and/or Cassandra Sevier is legally responsible for Christopher McKenzie's injuries, you may reasonably compensate Christopher McKenzie for any that he has suffered. The purpose[] of awarding damages is to compensate

9

a person who has been injured or harmed as fully and completely as possible.

The circuit court did not give a separate jury instruction on causation, and its only reference to causation was contained within the battery instruction. But it did instruct the jury that it could deduct from an award of compensatory damages any unreasonable or unnecessary medical expenses as well as any expenses solely attributable to a pre-existing condition. Specifically, the jury was instructed that it could compensate Mr. McKenzie for pre-existing conditions that were worsened or aggravated as a result of the incident.

During deliberations, the jury asked the court the following questions about the definition of battery:

1.  Does it mean that an individual crosses the street intentionally to hit on [sic] harm another person?

2.  Does it mean that once in this situation he reacts and hits another person?

The court, and counsel, agreed that the court could not answer the questions for the jury and the jury would have to refer to the definition of battery provided by the court in the jury charge, which the jury had been permitted to take into the jury room.

The jury found that Mr. Sevier had committed and was liable for the tort of battery, but awarded zero dollars in damages. The jury did not find that Mr. and Mrs. Sevier committed a civil conspiracy to cover up the events of July 7, 2015, nor did it find that Mr. Sevier acted with actual malice toward Mr. McKenzie. The jury likewise concluded that Mr. McKenzie had not committed a battery on Mr. Sevier by spitting on

10

him, nor had Mr. McKenzie used insulting words against Mr. Sevier. Finally, the jury concluded that Mr. McKenzie used insulting words against Mrs. Sevier, but did not award any damages.

The circuit court clarified on the record that the jury intended to find Mr. Sevier liable for battery but to award Mr. McKenzie zero dollars in damages. Neither party objected to the verdict form, nor did either party request that the jury be polled. But Mr. McKenzie filed a posttrial motion for a new trial on damages arguing that the verdict was either inconsistent or inadequate to compensate him for the damages resulting from the battery. The circuit court denied that motion and this appeal followed. Mr. and Mrs. Sevier make cross-assignments of error as to the circuit court's decisions to (1) impose discovery sanctions, (2) require the Seviers to pay their own costs despite that they were the substantially prevailing party, and (3) require the Seviers to pay the costs associated with the jury trial.

## II. Standard of Review

We review an order denying a motion for a new trial for abuse of discretion applying a two-pronged deferential standard:

> "[a]s a general proposition, we review a circuit court's rulings on a motion for a new trial under an abuse of discretion standard. *In re State Public Asbestos Litigation*, 193 W. Va. 119, 454 S.E.2d 413 (1994). . . . Thus, in reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as

11

to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review."[8]

We have also held that "[a]lthough the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence."[9]

As to the Seviers' cross-assignments of error, we review assessment of costs under Rule 54(d) of the West Virginia Rules of Civil Procedure for an abuse of discretion.[10] We also review discovery sanctions imposed by a circuit court for an abuse of discretion.[11]

### III.   Analysis

Mr. McKenzie's moved for a new trial under Rule 59(e) of the West Virginia Rules of Civil Procedure on the grounds that the jury's verdict was either inconsistent or inadequate because the jury found Mr. Sevier liable for battery but awarded zero dollars in

---

[8] *Williams v. Charleston Area Med. Ctr.*, 215 W. Va. 15, 18, 592 S.E.2d 794, 797 (2003) (quoting *Tennant v. Marion Health Care Found., Inc.*, 194 W. Va. 97, 104, 459 S.E.2d 374, 381 (1995)).

[9] Syl. Pt. 4, *Sanders v. Georgia–Pacific Corp.*, 159 W. Va. 621, 225 S.E.2d 218 (1976).

[10] *Collins v. City of Bridgeport*, 206 W. Va. 467, 477, 525 S.E.2d 658, 668 (1999).

[11] *Smith v. Gebhardt*, 240 W. Va. 426, 429-30, 813 S.E.2d 79, 82-83 (2018) (citing *Bartles v. Hinkle*, 196 W. Va. 381, 472 S.E.2d 827 (1996)).

12

damages despite the abundant evidence as to Mr. McKenzie's serious injuries. We have

held that a new trial may be granted on the single issue of damages:

> "Rule 59(a), R.C.P., provides that a new trial may be granted to any of the parties on all or part of the issues, and in a case where the question of liability has been resolved in favor of the plaintiff leaving only the issue of damages, the verdict of the jury may be set aside and a new trial granted on the single issue of damages." Syl. pt. 4, *Richmond v. Campbell*, 148 W.Va. 595, 136 S.E.2d 877 (1964).[12]

And, in the context of Rule 59 motions for damage awards, we may consider the

inadequacy of the amount of the verdict:

> [i]n a civil action for recovery of damages for personal injuries in which the jury returns a verdict for the plaintiff which is manifestly inadequate in amount and which, in that respect, is not supported by the evidence, a new trial may be granted to the plaintiff on the issue of damages on the ground of the inadequacy of the amount of the verdict.[13]

In reviewing a damage award that is alleged to be inadequate, "the evidence

concerning damages is to be viewed most strongly in favor of the defendant."[14]  As we

have previously discussed, "'[c]ourts are reluctant to set aside a jury's award of damages

unless it is clearly shown that the award was inadequate.'"[15]  But, "'[w]here a verdict does

---

[12] Syl. Pt. 2, *Payne v. Gundy*, 196 W. Va. 82, 468 S.E.2d 335 (1996).

[13] Syl. Pt. 3, *Biddle v. Haddix*, 154 W. Va. 748, 179 S.E.2d 215 (1971).

[14] Syl. Pt. 1, *Kaiser v. Hensley*, 173 W.Va. 548, 318 S.E.2d 598 (1983).

[15]  *Lenox v. McCauley*, 188 W. Va. 203, 209, 423 S.E.2d 606, 612 (1992) (quoting *Delong v. Kermit Lumber & Pressure Treating Co.*, 175 W.Va. 243, 246, 332 S.E.2d 256, 259 (1985)).

13

not include elements of damage which are specifically proved in uncontroverted amounts and a substantial amount as compensation for injuries and the consequent pain and suffering, the verdict is inadequate and will be set aside. *Hall v. Groves*, 151 W.Va. 449, 153 S.E.2d 165 (1967).' *King v. Bittinger*, 160 W. Va. 129, 231 S.E.2d 239, 243 (1976)."[16]

Given these guideposts for our review, the relevant inquiry is whether the evidence presented to the jury, viewed most strongly in favor of the defendant, justifies a zero-dollar damage award despite the jury's finding that Mr. Sevier was liable for battery. The Seviers propose three general explanations that would enable a jury to reach its finding of liability but no damages: (1) the jury concluded Mr. McKenzie was the proximate cause of his own injuries by tripping over the lip of the driveway; (2) Mr. McKenzie had preexisting conditions; or (3) given Dr. Darbondi's testimony, the jury could have concluded that the reasonableness of medical expenses had not been proven. We consider causation first and then pre-existing conditions and medical expenses.

### A. Lack of Causation

We begin with the Seviers' contention that the jury concluded that the battery did not proximately cause Mr. McKenzie's injuries. This Court has adopted the definition of battery as stated in the Restatement (Second) of Torts:

> "[a]n actor is subject to liability to another for battery if (a) he acts *intending* to cause a harmful or offensive contact with the person of the other or a third person, or an imminent

---

[16] Syl. Pt. 3, *Kaiser*, 173 W. Va. at 550, 318 S.E.2d at 600.

14

apprehension of such contact, and (b) a harmful contact with the person of the other directly or indirectly results." (Emphasis added.) The word "intent" in the Restatement denotes that "the actor desires to cause the consequences of his act, or that he believes the consequences are substantially certain to result from it."[17]

Definitionally, Mr. Sevier, in committing a battery, intended to cause a harmful contact and harmful contact direct or indirectly resulted. Accordingly, when the jury concluded Mr. Sevier committed battery, it found him liable for the consequences of that battery. The Seviers argue that Mr. McKenzie did not suffer any broken bones in his face and that all of the injuries he suffered on July 7 were to the back of his head. And, the injuries sustained to the back of his head resulted from Mr. McKenzie tripping over the lip of the driveway. So, the impact made by Mr. Sevier's fist did not cause any of Mr. McKenzie's injuries. We disagree; neither the law nor the evidence presented at trial supports this contention.

Battery is an intentional tort premised on the intent to act and the intent to bring about consequences,[18] as opposed to negligently acting and bringing about consequences that should have been foreseeable to the tortfeasor.[19] So, the causal link inquiry is not, as the Seviers suggest, one of *proximate cause* as that term has been defined and refined through many years of negligence jurisprudence inasmuch as proximate cause

---

[17] *Funeral Servs. by Gregory v. Bluefield Cmty. Hosp.*, 186 W. Va. 424, 427, 413 S.E.2d 79, 82 (1991), overruled on other grounds, *Courtney v. Courtney*, 190 W. Va. 126, 437 S.E.2d 436 (1993) (quoting Restatement (Second) of Torts § 13(a) and (b)).

[18] *See id.*

[19] *See generally*, 65 C.J.S. Negligence § 187.

15

in that context hinges so particularly on foreseeability. For that reason, the Seviers' argument relying on proximate cause espoused in our negligence jurisprudence is simply inapplicable here in the intentional tort context.

Further, the Seviers' negligence-derived argument that the jury arrived at a zero-dollar damage award for lack of proximate causation begs the question: how would the jury have even known what proximate cause is? The jury here was not instructed on proximate cause, or on causation at all. It belies reason to assume that the lay jury self-concocted a proximate cause defense for Mr. Sevier when the contours of proximate cause have confounded legal minds throughout the history of negligence jurisprudence. And, even had it arrived at a legal limitation on liability for lack of foreseeability without instruction to do so, we note for the sake of common sense that it would have been entirely within the scope of foreseeable risk that if Mr. Sevier punched Mr. McKenzie, he could fall down.

Insofar as Mr. McKenzie was still required to prove a causal link between the battery and the damages he sought to recover, the scope of liability is greater in intentional tort than in negligence: "[f]or an *intended* injury the law is astute to discover even very remote causation. For one which the defendant merely ought to have anticipated, it has often stopped at an earlier stage of the investigation of causal connection."[20] Aptly

---

[20] PROSSER ON TORTS § 7 (1971) (quoting *Derosier v. New England Telephone & Telegraph Co.*, 130 A. 145, 152 (N.H. 1925)) (emphasis added).

16

put, "[m]ore liberal rules are applied as to the consequences for which [intentional tortfeasors] will be held liable, the certainty of proof required, and the type of damage for which recovery is to be permitted, as well as the measure of compensation."[21]

Applying that standard to the facts of this case as the jury heard them, that causal link is readily and irrefutably satisfied. That Mr. Sevier committed a battery is beyond dispute, both by the jury's finding and Mr. Sevier's own admission that he intentionally struck Mr. McKenzie in the face with a closed fist. It is also beyond dispute that the jury found Mr. Sevier liable for the consequences of that battery. Mr. Sevier intended to make contact with Mr. McKenzie's face when he punched him, knowing that it would cause harm, at least to Mr. McKenzie's face, even if he did not contemplate or intend the extent to which Mr. McKenzie was ultimately harmed.

So, while Mr. McKenzie may not have broken any bones in his face, it does not follow that Mr. McKenzie suffered no damage to his face from the punch: the jury heard testimony as to his facial injuries and saw photographs of bruises and abrasions to his face. Likewise, although the Seviers' counsel posed to the jury during closing argument that Mr. McKenzie was "hurt much more significant [sic] than [the Seviers] would ever possibly have imagined[,]" the mere fact that the brain injury Mr. McKenzie sustained was an unintended consequence does not serve to sever Mr. Sevier's liability for his intentional

---

[21] *Id.*

17

act. And, the jury heard undisputed evidence of a continuous sequence of events set in motion by Mr. Sevier punching Mr. McKenzie and directly resulting in Mr. McKenzie's traumatic brain injury.[22]

Mr. Sevier testified that after he struck Mr. McKenzie in the face, Mr. McKenzie ultimately landed in his driveway. Mr. Sevier further testified in response to his own counsel's questions:

"Q. When you hit Mr. McKenzie, did he fall down?

---

[22] We note that the Seviers appear to assert something akin to comparative fault inasmuch as Mr. McKenzie was indisputably intoxicated and they allege the jury concluded that intoxication, in whole or in part, brought about his fall over the lip of the driveway.

We are somewhat perplexed by that argument since the Seviers did not make such a comparative fault argument below, had one been appropriate in the intentional tort context. The Seviers also conceded that "this isn't like a car accident case where you have the opportunity to evaluate somebody's negligence or somebody's this much at fault and they're not completely at fault. No, this is all or nothing." The jury was not instructed on comparative fault, nor was the verdict form directed at reflecting a comparative fault theory and, of course, the jury did not apportion any amount of fault to Mr. McKenzie for the battery for being intoxicated or otherwise; the jury did not even conclude that Mr. McKenzie had battered Mr. Sevier.

Importantly, comparative fault is a question of apportioning *liability*. If there is an assessment of liability to an injured plaintiff on a comparative fault theory, it has the *result* that his or her damages are reduced. The jury found Mr. Sevier liable for battery and liability is not at issue in this appeal.

Accordingly, given that this appeal solely challenges the lack of *damages* awarded to Mr. McKenzie, we do not reconsider whether the jury appropriately concluded Mr. Sevier, and only Mr. Sevier, was responsible for the injuries Mr. McKenzie sustained. Rather, our inquiry focuses on the jury's failure to compensate Mr. McKenzie for his injuries and the circuit court's denial of a new trial. *See Payne v. Gundy*, 196 W. Va. 82, 85, 468 S.E.2d 335, 338 (1996).

18

A. After he stumbled back.

Q. Okay. But, I mean, it wasn't like you see people in the movies and you hit him in the face and his knees buckled and he collapsed?

A. No. It wasn't like that.

Q. All right. So he stumbled back and windmilled his arms at [sic] hit his heels on his driveway; correct?

A. Yes.

During a demonstration of Mr. Sevier striking Mr. McKenzie at point A to where Mr. McKenzie ultimately landed, at point B, Mr. Sevier testified that the punch began, and caused, the series of events:

Q. . . . This is your opportunity – this is the jury's opportunity to understand what happened that night.

A. I hit him. He took a couple steps back, hit his heel on the thing, and he staggered back, and that's when he fell backwards and hit his head.

Q. Okay. And you would agree that your action in hitting him is what caused him to stumble back –

A. Yes.

Q. – and trip?

A. I suppose, yeah.

Q. You suppose or do you agree?

A. Yeah.

That continuous series of events was also memorialized in Mr. Sevier's statement to police: "I punched him in the cheek as he fell over the curb of his driveway

19

and hit his head on the driveway falling backwards." Officer Staley recalled that Mr. Sevier relayed to him a similar version of events:

> [h]e stated that he came over to get his wife and Mr. McKenzie spit on him, at which time he stated that he struck McKenzie one time with a closed fist to the cheek and at that time Mr. McKenzie stumbled backwards and struck his head on the driveway. He tripped on the little ledge.

Officer Moran testified to the same: "[The Seviers] said that [Mr. McKenzie]. . . had spit on [Mr. Sevier], and as a result was then punched and he fell over after being punched and hit his head on the driveway."

> And, Mrs. Sevier's testimony was consistent with that sequence of events:
>
> Q. So [Mr. Sevier] hits [Mr. McKenzie] and then you and [Mr. McKenzie] just turn around and head back towards your driveway?
>
> A. Toward the driveway, yes.
>
> Q. Okay. So then, I presume, you didn't see [Mr. McKenzie] trip or anything if you turned around and walked back to your driveway?
>
> A. I saw him fall, yes, I did. When [Mr. Sevier] hit [Mr. McKenzie] he stepped back a couple paces, hit the driveway and fell and hit his head.

Finally, Ms. Akers testified to the direct relationship between Mr. Sevier's punch and Mr. McKenzie's fall: "[Mr. Sevier] punched [Mr. McKenzie] in the face, and [Mr. McKenzie] took a couple steps back as if he, you know, had gotten hit in the face, took a few steps back, on his way backwards, he tripped and fell and he had landed down on his back." Even in closing arguments, the Seviers' counsel acknowledged the direct relationship

between the two events: "There's no question Mr. McKenzie got hit in the back of the head, but what he [sic] himself on, was his driveway. . . . Mr. Sevier reacted, hit him in the face, and he stumbled back and hit his heels and fell in his driveway and hit the back of his head."

While the Seviers argue that Mr. McKenzie "tripping" over the lip of the driveway was an independent cause of Mr. McKenzie's head injury, the uncontroverted evidence presented at trial disproves that theory. The jury heard utterly consistent testimony that Mr. Sevier punched Mr. McKenzie, and that as a result of that punch, Mr. McKenzie stumbled backward, fell, and sustained his head injury. It heard *no* evidence that Mr. McKenzie righted himself after the punch and then tripped of his own accord. As a result, the jury cannot plausibly have concluded that Mr. McKenzie's head injury was so remote a consequence of the battery that the damages flowing from it were not compensable, particularly under the more relaxed causation standards of intentional tort.

Even viewing the evidence most favorably to the Seviers, the abrasions and bruises to Mr. McKenzie's face alone would have been sufficient to award at least *some* damages. Likewise, Mr. McKenzie's brain injury is a far cry from a remote consequence of the battery such that a causal relationship between the two could even have been debatable. The evidence and the law simply do not support the Seviers' contention that the jury was prompted by a lack of causation to find liability for battery and no resulting damages.

21

## B. *Pre-existing Conditions and Reasonableness of Medical Expenses*

Next, the Seviers contend that the jury heard evidence that Mr. McKenzie suffered from various pre-existing conditions, specifically, alcoholism. The jury also heard evidence that Mr. McKenzie had suffered falls that could be attributed to his own refusal to accept treatment in the form of walking assistive devices. Finally, the jury heard testimony from Dr. Darbondi that she could not attest to the charges in a portion of the medical records because she had not seen them.

We agree with the Seviers that those could be appropriate grounds to *reduce* an award of damages, and the circuit court instructed the jury as such. But in this case, the jury awarded *zero* dollars in damages. To reach a zero-dollar damage award on these facts, the jury had to have concluded that *every single dollar* of medical expense in treating Mr. McKenzie for his facial injuries and his traumatic brain injury was unnecessary or unreasonable. Alternatively, it had to have concluded that *every single ailment* Mr. McKenzie suffered as a result of the traumatic brain injury, *including* the infliction of the brain injury itself, was typical for a patient suffering from alcoholism, diabetes, depression, or any of Mr. McKenzie's other pre-existing conditions.[23] We have little trouble concluding that either of those findings fly in the face of reason.

---

[23] The circuit court appropriately instructed the jury that it could compensate Mr. McKenzie for pre-existing conditions that were exacerbated by Mr. Sevier's conduct.

We need only review the evidence presented at trial to readily conclude the zero-dollar damage award is inadequate. Mr. McKenzie introduced approximately $170,000 in medical bills into evidence. The circuit court appropriately instructed the jury that the fact that the medical bills were paid or incurred is prima facie evidence of their necessity and reasonableness.[24] Similarly, it instructed the jury that the medical bills introduced are considered reasonable and necessary *unless* the Seviers proved them either to be unreasonable in amount, or unnecessary for the medical care of Mr. McKenzie.[25]

So, even viewing the evidence most favorably to the Seviers, at trial the Seviers had to fight an uphill battle to disprove the necessity and reasonableness of those expenses. Dr. Darbondi testified that the traumatic brain injury, subsequent surgeries, neurological care, ophthalmological care were medically necessary.[26] That evidence went unrefuted. Even if we give the Seviers the benefit of Dr. Darbondi's testimony that neurological deficits, generally, could be attributed to chronic alcoholism; that Mr.

---

[24] *See* W. Va. Code § 57-5-4j (1981).

[25] *See id.*

[26] The Seviers' brief contends that "the only medical witness presented by the appellant was unable to establish the reasonableness of any medical expenses either past or future." That argument is an overgeneralization of the testimony cited because the testimony refers to *charges* and a portion of the medical expenses that Dr. Darbondi had not viewed. It is misleading insofar as Mr. McKenzie did not seek damages for future medical care. Most importantly, however, it ignores that the medical expenses are considered reasonable until proven otherwise and that incurring and paying the medical expenses are prima facie evidence of reasonableness. That is, Mr. McKenzie met his burden of proof as to reasonableness when he introduced the medical records into evidence and the onus then shifted to the Seviers to prove them unreasonable.

23

McKenzie's care at HealthSouth for his chronic conditions was not compensable; and that Mr. McKenzie's falls were attributable to his failure to use assistive devices, we *still* are not able to dwindle nearly $170,000 in black and white compensatory damages down to zero. One does not come by left brain stem hemorrhagic stroke, an intracranial hemorrhage, a subdural hematoma, and a subarachnoid hemorrhage by means of chronic alcoholism or any of Mr. McKenzie's other pre-existing conditions, nor can the procedures to correct those injuries be deemed unnecessary or unreasonable given the medical expenses introduced, and the Seviers' failure to disprove their necessity and reasonableness.

The same can be said for the apparent and significant injuries for which the jury not only awarded no compensation to cover his medical expenses, but none for his pain and suffering. The jury determined that Mr. McKenzie suffered a battery, and that battery left him unconscious, lying in a pool of his own blood with a caved in skull and his brain matter on the pavement. That Mr. McKenzie endured pain and suffering as a result of the battery is beyond question. The battery not only caused injuries to Mr. McKenzie's face, but ultimately caused a traumatic brain injury and resultant permanent impairments at significant cost to Mr. McKenzie both monetarily and to his quality of life. Those elements were demonstrated to the jury and were uncontroverted.

We have held that "[w]e will not find a jury verdict to be inadequate unless it is a sum so low that under the facts of the case reasonable [persons] cannot differ about

24

its inadequacy."[27]  We have discussed that reluctance to second-guess a jury's verdict as follows:

> It is true that courts are reluctant to set aside jury verdicts as to damages, and this is particularly true as to inadequate damages.  The courts usually state that though they might have awarded a greater or lesser amount than that contained in the jury verdict, they will not substitute their views for that of the jury.
>
> It is also true that there is no market price or monetary equivalent for pain and suffering . . . and that a jury award for these will generally not be disturbed because of the small amount awarded.  *A different issue is presented, however, where there is uncontradicted evidence that there was a substantial injury for which the jury has made no award of damages in any amount.*[28]

Where that issue arises, "[a] jury verdict awarding no damages cannot stand where the preponderance of the evidence, or, as in this case, the uncontradicted evidence, shows injury of a substantial nature."[29]  And, "'[a] verdict of the jury will be set aside where the amount thereof is such that, when considered in light of the proof, it is clearly shown that the jury was misle[d] by mistaken view of the case.'"[30] Further, "we have

[27] Syl. Pt. 2, *Fullmer v. Swift Energy Co., Inc.*, 185 W. Va. 45, 404 S.E.2d 534 (1991).

[28] *Keiffer v. Queen*, 155 W. Va. 868, 873-74, 189 S.E.2d 842, 845 (1972) (emphasis added).

[29] *Id.* at 874, 189 S.E.2d at 845.

[30] *Id.* (quoting syl. pt. 3, *Raines v. Faulkner*, 131 W. Va. 10, 48 S.E.2d 393 (1947)).

'consistently held that where there is uncontroverted evidence of damages and liability is proven, a verdict not reflecting them is inadequate.'"[31]

So, while we do not set aside the jury's zero damage award lightly, we conclude that there was uncontroverted evidence that Mr. McKenzie suffered substantial injury and was entitled to at least *some* compensation for his injuries. The jury's zero-dollar damage award is inadequate and inherently inconsistent with the evidence presented at trial such that reasonable minds could not differ as to its inadequacy.[32] We therefore reverse and remand for a new trial solely on the issue of damages.[33]

## C. The Seviers' Cross-Assignments of Error

[31] *Payne*, 196 W. Va. at 87, 468 S.E.2d at 338 (quoting *Raines v. Thomas*, 175 W. Va. 11, 14, 330 S.E.2d 334, 336 (1985)).

[32] Mr. McKenzie argues that the jury's verdict is either inadequate, inconsistent, or both. We find that the arguments before us are more suited to a discussion of the adequacy of a zero-dollar damage award as inconsistent with the evidence presented at trial as opposed to a procedural objection to a defect in the verdict form itself. For that reason, we need not analyze whether Mr. McKenzie waived his right to challenge an inconsistent verdict by not objecting to the verdict before the jury was dismissed. *See* Syl. Pt. 4, *State ex. rel Valley Radiology, Inc. v. Gaughn*, 220 W. Va. 73, 640 S.E.2d 136 (2006) ("The general rule of waiver established by this Court in *Combs v. Hahn*, 205 W. Va. 102, 516 S.E.2d 506 (1999), which requires that any objections to the verdict form based on defect or irregularity be made prior to the jury's dismissal, is not applicable to post-trial motions seeking relief based on the inadequacy of the damages awarded.").

[33] *See supra* n.12, 13.

The Seviers make two cross-assignments of error, one pertaining to costs and one pertaining to the imposition of discovery sanctions. We examine each in turn.

### i. Costs

The Seviers first argue that the circuit court erred in ordering that the parties be responsible for their own costs, with the exception that the Seviers were required to pay the costs of the jury. For purposes of analysis, these are two separate issues: (1) whether the Seviers were the substantially prevailing party, and, if so, whether the circuit court abused its discretion in not awarding them their costs; and (2) whether the circuit court abuse its discretion by requiring the Seviers to pay the costs associated with a jury trial.

The Seviers contend that they were the prevailing party at trial, and so are entitled to recover their costs under West Virginia Code § 59-2-8 and Rule 54(d) of the West Virginia Rules of Civil Procedure. West Virginia Code § 59-2-8 (2005) provides

> Except where it is otherwise provided, the party for whom final judgment is given in any action, or in a motion for judgment for money, whether he be plaintiff or defendant, shall recover his costs against the opposite party; and when the action is against two or more, and there is judgment for or discontinuance as to some but not all of the defendants, those for whom there is judgment, or as to whom there is such discontinuance, shall recover their costs.

Similarly, Rule 54(d) states, in relevant part, "Costs. Except when express provision therefor is made either in a statute of this State or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs[.]"

27

Because the Seviers allege they are the prevailing party, the Seviers assign error to the circuit court's assessment of costs against them because they contend it departs from the procedural rule without any predicate findings to justify that departure.[34] The Seviers appear to take it as confessed that they are the prevailing party under a 54(d) analysis. But we do not accept that premise, and so cannot conclude that the circuit court erred in requiring the parties to absorb their own costs.

At the outset, we observe that the circuit court did not find either the Seviers or Mr. McKenzie to be the prevailing party. In support of their argument that they are the prevailing party, the Seviers simply state that "[t]here is no question that [the Seviers] were the substantially prevailing parties, particularly against the plaintiff, Anna McKenzie, who voluntarily withdrew her claim immediately prior to trial[.]" That argument, of course, ignores that this was a mixed judgment case. The Seviers prevailed on the insulting words claim as to Mrs. Sevier as well as the civil conspiracy claim, and Mrs. McKenzie's loss of consortium claim was voluntarily dismissed. And, Mr. McKenzie prevailed on his battery claim, Mr. Sevier's battery claim against him, and the insulting words claim as to Mr. Sevier.

---

[34] *See* Syl. Pt. 1, *Perdomo v. Stevens*, 197 W. Va. 552, 476 S.E.2d 223 (1996) ("When a trial court assesses costs by relying on the provisions of West Virginia Rules of Civil Procedure 54(d), the record must contain specific predicate findings for that decision when the costs are assessed against a prevailing party.").

Given that neither party has substantially prevailed, we do not find that the circuit court abused its discretion in determining that neither was entitled to the presumption of an award of costs under Rule 54(d).[35] That rule does not contain any requirement that the circuit court *must* pick a "winner" in mixed judgment cases, nor does West Virginia Code § 59-2-8. "'[T]he trial [court] . . . is vested with a wide discretion in determining the amount of . . . court costs and counsel fees, and the trial [court's] . . . determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that he has abused his discretion.' Syllabus Point 4, in part, *Ball v. Wills*, 190 W.Va. 517, 438 S.E.2d 860 (1993)."[36] That discretion encompasses the decision not to award costs to either party if neither is the prevailing party. Accordingly, we do not find error in the circuit court's assessment of costs to be borne by the individual parties.

The propriety of assigning the costs of the jury trial solely to the Seviers is a separate question since neither party was found to be the prevailing party. While Rule 54(d) imbues the circuit court with discretion in assessing fees, that discretion permits assessment of fees against the non-prevailing party; assessment of fees to the prevailing party may only be permitted if it states reasons for assessing costs against the prevailing

---

[35] Though the circuit court's order does not specify that it made a determination under Rule 54(d), we treat it as such given that the Seviers pose their argument in terms of Rule 54(d).

[36] *Collins*, 206 W. Va. at 477, 525 S.E.2d at 668.

29

party.[37]  So, because Rule 54(d) contemplates that there can only be *one* prevailing party, an assessment of jury costs to the Seviers under Rule 54(d) is inconsistent with the notion that neither party prevailed.

In other words, either Mr. McKenzie or the Seviers could have been deemed prevailing parties and would have been entitled to recover costs unless that presumption was rebutted by the non-prevailing party.  By ordering that the parties absorb their own costs, the circuit court did not find either party to be prevailing such that they were entitled to recover costs under Rule 54(d).  Yet, the circuit court assessed the costs of the jury to the Seviers, stating that the Seviers should bear the jury costs because Mr. McKenzie requested a bench trial, to which the Seviers objected, and demanded a jury trial.  If neither party was the prevailing party under Rule 54(d), then that rule is taken out of the equation altogether and it cannot serve as the authority to assess jury costs to the Seviers.

In order to assess costs there must be an enabling provision:

> Traditionally, at common law, neither party to an action was entitled to recover the costs of litigation. *See* Cleckley et al., *supra* § 54(d), at 1078 n. 48. While the law on costs has evolved with specific statutes and court rules that now permit the recovery of costs in certain instances, the general rule remains that "awards of costs and attorney fees are not recoverable in the absence of a provision for their allowance in

---

[37] *See* Syl. Pt. 1, *Perdomo v. Stevens*, 197 W. Va. 552, 476 S.E.2d 223.

30

a statute or court rule." *Nelson v. W. Va. Pub. Employees Ins. Bd.*, 171 W.Va. 445, 450, 300 S.E.2d 86, 91 (1982).[38]

So, the initial issue we must resolve in determining whether the circuit court erred in assessing the jury costs is whether there is authority outside of Rule 54(d) authorizing it. We find it in West Virginia Code § 52-1-17(c) (2016). That code provision states, in relevant part, that

> [a]ny time a panel of prospective jurors has been required to report to court for the selection of a petit jury in any scheduled matter*, the court shall, by specific provision in a court order, assess a jury cost.* In both magistrate and circuit court cases the jury cost shall be the actual cost of the juror's service[.][39]

This statute also provides at subsection (c)(2): "The jury costs shall be assessed as follows: . . . (2) In every civil case, against either party or prorated against both parties, at the court's discretion, if the parties settle the case or elect for a bench trial[.]" So, even if a circuit court does not make an award of costs to a prevailing party under Rule 54(d), it still must assess the costs of the jury to one or both parties.[40]

The Seviers argue that the circuit court may not assess costs against a prevailing party for the simple reason that they requested a jury trial. We disagree as far as the Seviers were not found to be the prevailing party, and § 52-1-17(c)(2) provides that

---

[38] *Carper v. Watson*, 226 W. Va. 50, 56, 697 S.E.2d 86, 92 (2010).

[39] (Emphasis added).

[40] There is also a provision, not applicable here, that enables the circuit court to forego assessment of the jury fee altogether where fairness and justice so require. *See* W. Va. Code § 52-1-17(c)(3).

31

the circuit court has discretion to assess the costs to either party, or both parties, if the parties elect for a bench trial. Mr. McKenzie elected a bench trial[41] and the costs of the jury would not have been incurred but for the Seviers' exercise of their rights to trial by jury. The right to a trial by jury, while constitutionally guaranteed, does not mean a *cost-free* jury trial, at least where the party who exercised that right is not the prevailing party.[42] Had the Seviers prevailed at trial, they might have recovered those costs under Rule 54(d), but § 52-1-17(c)(2) affords the circuit court the discretion to assess the costs of the jury trial to the Seviers, and we cannot conclude that it abused its discretion in that regard.

### ii. Sanctions

We turn next to the sanctions imposed against the Seviers for discovery misconduct upon motion by Mr. McKenzie under Rule 37 of the Rules of Civil Procedure. The circuit court initially imposed sanctions against the Seviers in the form of attorneys' fees in a January 9, 2018 order for (1) failure to fully and completely respond and/or supplement responses to certain discovery requests despite court order requiring them to

---

[41] We note that Mr. McKenzie originally requested a jury trial, but later elected for a bench trial. The Seviers contend that under Rule 38(d) of the West Virginia Rules of Civil Procedure, that request for a jury trial could not be withdrawn without the consent of all parties. Rule 38(d), however, is concerned with *waiver* of a jury trial and unilateral withdrawal as affecting the rights of other parties to a jury trial when one party has made a jury demand on which others relied. *See, e.g.*, *Fuller v. City of Oakland*, 47 F.3d 1522, 1530-31 (9th Cir. 1995). Because Rule 38 and Rule 39, by extension, are aimed at *securing* the right to a jury trial, we fail to see the relevance of those provisions under these facts.

[42] For example, in the immediately preceding section, jury costs are assessed to a criminal defendant upon conviction whether by plea, bench trial, or jury verdict. W. Va. Code § 52-1-17(c)(1).

do so; (2) continued failure to produce cellphone records; (3) continued failure to provide a privilege log for numerous objections to privileged information; (4) "complete and utter lack of explanation" for Mrs. Sevier's failure to supplement discovery responses until the eve of the hearing; and (5) a pattern of dilatory discovery practices.

The circuit court granted a motion to compel discovery, again for incomplete discovery responses, in a June 13, 2018 order, but held others in abeyance, including the motion for sanctions that accompanied the motion to compel. The circuit court, in a July 27, 2018 order, granted Mr. McKenzie's motion to compel discovery, again in relation to privilege logs and incomplete discovery responses, but again held the motion for sanctions in abeyance. After the trial of the matter, when it was clear that the cell phone records were never going to be produced and had not been subpoenaed by the Seviers' counsel as represented, and that discovery responses could no longer be supplemented the circuit court *then* imposed sanctions against the Seviers for failure to comply with court orders.

The Seviers now argue on appeal that the circuit court ignored the decisions of this Court as to the scope of discovery and that the circuit court abused its discretion because it sanctioned the Seviers for discovery misconduct and ignored "litigation misconduct" of Mr. McKenzie.[43] As to the first argument, the Seviers have cited two cases,

---

[43] We observe that the Seviers do not appear to argue that they had, in fact, complied with the court order, nor do they argue that the imposed sanction was disproportionate to the discovery misconduct.

*Truman v. Farmers & Merchants Bank*,[44] and *State Farm Mut. Ins. Co. v. Stephens*.[45] While those cases represent, generally, that discovery may be limited in scope if unduly burdensome or oppressive, the Seviers have provided no assertion or argument whatsoever as to how the circuit court ignored the decisions in those cases with regard to the discovery at issue or the sanctions imposed.

As to the contention that the circuit court improperly sanctioned the Seviers for discovery misconduct while permitting Mr. McKenzie to engage in "litigation misconduct," that alleged litigation misconduct is not before this Court for review. [46] It is beyond the scope of our review because the Seviers never filed a motion to address that alleged litigation misconduct, nor did the Seviers present it to the circuit court in the context of sanctions imposed for their failure to comply with court orders. The circuit court gave the Seviers every opportunity to correct dilatory discovery practices before it imposed sanctions, and we find no abuse of discretion.[47]

---

[44] 180 W. Va. 133, 375 S.E.2d 765 (1988).

[45] 188 W. Va. 622, 425 S.E.2d 577 (1992).

[46] The Seviers assert that Mr. McKenzie wrongfully obtained a default judgment against Mr. Sevier through unauthorized service of process; that Mr. McKenzie filed a motion to disqualify counsel with no legal basis; and that the circuit court permitted the dismissal of Mrs. McKenzie as a defendant on the eve of trial.

[47] The Seviers raise generally that the circuit court failed to "consider the factors outlined in *Prager v. Meckling*, 172 W. Va. 785, 310 S.E.2d 852 (1983)" with no context or further argument. This Court issued five syllabus points in that case and we have no context to determine the point of law to which the Seviers refer. The only syllabus point

## IV.    Conclusion

For the reasons set forth above, we reverse, in part, the December 11, 2018 order of the Circuit Court of Marion County denying Mr. McKenzie's motion for a new trial on damages on the grounds that it is an inadequate verdict, and remand for a new trial solely on the issue of damages.  We affirm the December 11, 2018 order imposing sanctions against the Seviers for discovery misconduct and find no error in the circuit court's assessment of costs.

Affirmed, in part; reversed, in part; and remanded.

---

referring to "factors" and to which we refer as the *Prager* factors, is syllabus point 5. However, that syllabus point is directed at determination of whether evidence should be excluded as discovery sanction.  Given that the sanctions here were imposed post-trial and were in the form of attorney fees, that is obviously inapplicable.  To the extent that *Prager* requires consideration of a prior motion to compel discovery before imposing sanctions, the circuit court's three prior, extensive orders examining the discovery at issue and compelling that discovery certainly suffice.